Michelle C. Yau (*Pro Hac Vice* forthcoming)
Mary J. Bortscheller (*Pro Hac Vice* forthcoming)
Daniel R. Sutter (*Pro Hac Vice* forthcoming)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| Amy Eliason, Angela Hueckel and Lindie Lawrence, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T Inc., AT&T Services, Inc. and the AT&T Pension Benefit Plan,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Amy Eliason, Angela Hueckel and Lindie Lawrence, by and through their attorneys, on behalf of themselves and all others similarly situated, allege the following:

## I.  NATURE OF THE ACTION

1.      This is a civil enforcement action brought under sections 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1132(a)(3), concerning Defendants' violations of ERISA's actuarial equivalence requirements and anti-forfeiture provision with respect to the AT&T Pension Benefit Plan (the "AT&T Plan" or the "Plan").

2.      Plaintiffs and the class are all vested participants in the AT&T Plan and have been denied their full ERISA-protected pension benefits. Specifically, Plaintiffs and class members are

forced to forfeit accrued, vested pension benefits if they retire before age 65 and/or receive their pension benefit in the form of a Joint and Survivor Annuity. This is because the Plan's terms reduce these alternative forms of benefits using "Early Retirement Factors" and "Joint and Survivor Annuity Factors" which result in Plan participants receiving less than the actuarial equivalent of their vested accrued benefit, as required by ERISA.

3.      A participant's pension benefit is expressed as a monthly pension payment beginning at "normal retirement age," which is age 65 under the AT&T Plan. This monthly payment is a single life annuity because it pays a monthly benefit to the participant for her entire life (i.e., from the time she retires at age 65 until her death).

4.      Under ERISA, "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [of 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit . . . ." ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3). "This rule that regardless of any option as to timing or form of distribution, a vested participant in a defined benefit plan must receive a benefit that is the actuarial equivalent of her normal retirement benefit . . . has been repeatedly recognized by courts." Esden v. Bank of Boston, 229 F.3d 154, 163 (2d Cir. 2000).

5.      Thus, ERISA requires that if a plan allows a participant to retire early with a reduced monthly pension, the value of their reduced monthly pension must be actuarially equivalent to the participant's monthly pension benefit commencing at age 65.

6.      For example, assume that a plan allows a participant with an accrued monthly pension of $1,000 per month beginning at age 65 to retire one year early with a reduced monthly benefit of $980To determine whether the two alternative retirement benefits are actuarially equivalent (one of $1,000 per month starting at age 65 and the other of $980 per month starting at age 64), the present value today of each stream of payments must be the same.

7.      This case concerns two ways in which the AT&T Plan improperly reduces pension benefits, in violation of ERISA's actuarial equivalence rules.

8.      First, the Plan's Early Retirement Factors reduce benefits to less than the actuarial equivalent amount of the participant's monthly benefits commencing at age 65. The earlier the participant retires, the greater the reduction to her benefits.

9.      For example, under most programs[1] of the Plan, if a participant's normal pension benefit beginning at age 65 is $10,000 per month, and she retires at age 60, her monthly benefit is reduced by a factor of 0.58.[2] As a result, the value of her monthly benefit is 58% of $10,000, or $5,800 per month, when the actuarial equivalent benefit she is entitled to receive under ERISA is approximately $7,090 per month.

10.     The second involves another alternative form of benefit, a joint and survivor annuity, which under the Plan's terms does not provide participants with the actuarial equivalent of their vested, accrued pension benefit. ERISA requires that pension plans offer participants the option of receiving a payment stream for their life and their partner's life after the retiree dies; this is a "joint and survivor annuity." ERISA § 205(d), 29 U.S.C. § 1055. For married participants, the joint and survivor annuity is the default form of pension payment unless the spouse consents to the participant receiving a single life annuity.

11.     A joint and survivor annuity is expressed as a percentage of the benefit paid during the retiree's life. For example, a 50% joint and survivor annuity provides a surviving spouse with 50% of the amount that was paid during the retiree's life.

12.     Relevant here, the Plan's Joint and Survivor Annuity Factors reduce benefits to less than the actuarial equivalent amount of a participant's benefit expressed as a single life annuity. For example, if a participant's single life annuity benefit is $10,000 per month, and she is married, her default form of benefit is a 50% Joint and Survivor Annuity, which is reduced by a factor of 0.90 for

---

[1] Benefits under the Plan are provided through separate "programs," each of which is a separate portion of the Plan that provides benefits to a particular group of participants or beneficiaries. To the best of Plaintiffs' knowledge based on the available information, the separate programs correspond to subsidiary companies which merged with or were acquired by AT&T Inc. over time.

[2] *See* Table 1, *infra*, showing the Early Reduction Factors for the 10 non-cash balance programs in the Plan.  The Reduction Factor is 0.58 for six of the 10 programs in the Plan, 0.60 for two of the programs and 0.58 for two programs.

most programs under the Plan.[3] As a result, the participant's monthly benefit is 90% of $10,000 per month, or $9,000 per month, when the actuarial equivalent benefit she is entitled to receive under ERISA is approximately $9,200 per month.

13. The Plan maintains Joint and Survivor Annuity Factors (set forth below in Table 2) that reduce those benefits to less than the actuarial equivalent of the participant's single life annuity benefit, even though the applicable Treasury regulations[4] require that "A qualified joint and survivor annuity must be at least the actuarial equivalent of the [single life annuity]. Equivalence may be determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 CFR § 1.401(a)-11(b)(2). In effect, the Plan's Joint and Survivor Annuity Factors illegally short-change participants who are married and thus are defaulted into electing a Joint and Survivor Annuity, which is less than the actuarial equivalent of their single life annuity benefit.

14. Put simply, if a participant retires before age 65, or takes her benefit in a form other than a single life annuity, or both, then her alternative form of benefit beginning at the age she retires must be the actuarial equivalent of her single life annuity benefit beginning at age 65. Nonetheless, the Early Retirement Factors and the Joint and Survivor Annuity Factors set forth in the Plan reduce participant benefits below their actuarial equivalent value and thus violate ERISA's statutory requirement of actuarial equivalence.

15. To the best of Plaintiffs' knowledge based on the available information, the Early Retirement Factors and the Joint and Survivor Annuity Factors in the AT&T Plan applicable to the Class have not been updated in over a decade, despite dramatic increases in longevity amongst the American public. Because the Early Retirement and the Joint and Survivor Annuity Factors have not been updated to be in line with reasonable actuarial assumptions, they do not yield actuarially equivalent payments to Class members as required by ERISA. As a result, Defendants have

---

[3] See Table 2, *infra*, showing the Joint and Survivor Factors for the 15 programs in the Plan. The Reduction Factor is 0.90 for nine of programs in the Plan, 0.88 for three of the programs, and 0.85 for the remaining three programs.

[4] The Tax Code contains numerous provisions which correspond to ERISA; here the provision which corresponds to ERISA § 205 (29 U.S.C. § 1055) is 26 U.S.C. § 401(a)(11).

improperly reduced Class members' pension benefits in violation of ERISA's actuarial equivalence requirements. ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3).

16.     In addition, ERISA § 203(a), 29 U.S.C. § 1053(a), provides that an employee's right to his or her vested retirement benefits is non-forfeitable and states that paying a participant less than the actuarial equivalent value of her accrued benefit results in an illegal forfeiture of her benefits. Thus, the Plan's terms that reduce participant benefits to less than their actuarial equivalent value violate ERISA's anti-forfeiture requirement set forth in § 203(a), 29 U.S.C. § 1053(a).

17.     The Class members, consisting of participants and beneficiaries of the AT&T Plan, are harmed by Defendants' determination and payment of benefits in violation of ERISA's actuarial equivalence and anti-forfeiture rules. ERISA § 204(c)(3) and § 203(a), 29 U.S.C. § 1054(c)(3) and § 1053(a).

18.     Plaintiffs bring this action on behalf of the Class pursuant to ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3) for all appropriate equitable relief, including but not limited to: a declaration that the Plan's Early Retirement Factors and Joint and Survivor Annuity Factors violate ERISA's actuarial equivalence and non-forfeitability requirements; reformation of the Plan to bring its terms into compliance with ERISA; and recalculation of benefits pursuant to the reformed Plan for all participants who received a Joint and Survivor Annuity or Early Retirement Benefit and payment to them of the amounts owed under the reformed Plan.

## II.  JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

20.     This Court has personal jurisdiction over AT&T Inc. because it transacts business in, employs people, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

21.     This Court has personal jurisdiction over the AT&T Plan because it offers and pays pension benefits to participants and beneficiaries in this District, and because ERISA provides for nationwide service of process.

22.     This Court has personal jurisdiction over AT&T Services Inc. because it transacts business in, and has significant contacts with, this District, and because ERISA provides for nationwide service of process.

23.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant AT&T Inc. may be found in, employed Plaintiff Hueckel and other Plan participants in, and otherwise does business in this District.

24.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Plaintiff Hueckel resides and may be found in this District, and she worked for AT&T Inc. or one of its subsidiaries in this district.

25.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant AT&T Inc. does business in this District.

### III.  PARTIES

**Plaintiffs**

26.     Plaintiff Amy Eliason is a resident of Duluth, Minnesota. She worked for AT&T Inc. or its predecessors from approximately 1975 until 1991 and participates in the AT&T Legacy Bargained Program of the Plan. In June 2019, when Plaintiff Eliason was 63 years and 1 month of age, she elected to participate in a lump sum window and receive a lump sum payment as an Early Retirement Benefit. Based on the information available to Plaintiffs, Plaintiff Eliason is harmed because Defendants applied an Early Retirement Factor to the determination of her lump sum benefit, so that she will receive less than the actuarial equivalent of a single life annuity taken at normal retirement age.

27.     Plaintiff Angela Hueckel is a resident of Alamo, California. She worked for AT&T Inc. or its predecessors from November 9, 1998 until March 9, 2015, and she participates in the Nonbargained Program of the Plan. In June 2019, when Plaintiff Hueckel was 51 years and 11 months of age, she elected to participate in a lump sum window and receive a lump sum payment as

an Early Retirement Benefit. Based on the information available to Plaintiffs, Plaintiff Hueckel is harmed because Defendants applied an Early Retirement Factor to the determination of her lump sum benefit, so that she will receive less than the actuarial equivalent of a single life annuity taken at normal retirement age.

28.     Plaintiff Lindie Lawrence is a resident of Arlington, Texas. She worked for AT&T Inc. or its predecessors from June 1978 until April 2004 and participates in the Southwest Program of the Plan. In June 2019, when Plaintiff Lawrence was 61 years and 6 months of age, she elected to participate in a lump sum window and receive a lump sum payment as an Early Retirement Benefit. Based on the information available to Plaintiffs, Plaintiff Lawrence is harmed because Defendants applied an Early Retirement Factor to the determination of her lump sum benefit, so that she will receive less than the actuarial equivalent of a single life annuity taken at normal retirement age.

**Defendants**

29.     **AT&T Inc.** is a media company comprised of multiple business units, including AT&T Communications which provides mobile, broadband and other communications services both domestically and abroad, and WarnerMedia, which produces entertainment, news, and sports media for film and television.

30.     AT&T Inc. is the "plan sponsor" for the Plan within the meaning of § 3(16)(A), 29 U.S.C. § 1002(16)(B).

31.     **The AT&T Defined Benefit Plan (the "Plan")** is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The Plan is joined as a nominal defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

32.     **AT&T Services, Inc. ("AT&T Services")** is a wholly-owned subsidiary of AT&T Inc., and is the Plan's "administrator" within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). It is responsible for the general administration of the Plan.

33.     Under the Plan Document[5], AT&T Services is and was a "named fiduciary" of the Plan at all relevant times within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a). As such, AT&T Services has/had the authority to control and manage the operation and administration of the Plan.

34.     Based on AT&T Services' discretionary authority and/or discretionary responsibility for Plan administration set forth in the Plan Document, AT&T Services is also a Plan fiduciary within the meaning of § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

35.     To the best of Plaintiffs' knowledge based on the available information, AT&T Services did exercise authority and control over the Plan's administration and management by, *inter alia*, making determinations of the value of benefits to pay Plan participants including the determination that those benefits were consistent with ERISA's requirements and strictures. As such, AT&T Services is a plan fiduciary within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) because it exercised discretionary authority or discretionary control respecting management of such plan.

## IV.  LEGAL BACKGROUND

### A.     Actuarial Equivalence

36.     Actuarial equivalence is a computation that is designed to ensure that, all else being equal, alternative forms of benefit payments are on par with each other, meaning that any one form provides the recipient the same economic value as another form.

37.     Generally, an actuarial equivalence computation considers the expected longevity of a participant and a market rate of return. All else being equal, the longer the participant is expected the live, the less their benefits will be reduced by the actuarial equivalence computation.

38.     To comply with ERISA, as well as to be considered a qualified plan under the Code, a plan must comply with specified valuation rules. *See* Treas. Reg. § 1.411(a)–11(a)(1).

---

[5] Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument (the "Plan Document").

39.     ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age ... the employee's accrued benefit ... shall be the actuarial equivalent of such benefit ..."

40.     It is well established that, regardless of the timing or form of a pension benefit distribution, a vested participant in defined benefit plan must receive a benefit that is the actuarial equivalent of her normal retirement benefit.

41.     ERISA § 3(24), 29 U.S.C. § 1002(24) defines "normal retirement age" as age 65, or younger if provided by the pension plan. *See also* 26 U.S.C. § 411(a)(8); Treas. Reg. § 1.411(a)–7(b).

42.     This actuarial equivalence requirement set forth in ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), is repeated in the parallel Tax Code provision. 26 U.S.C. § 411(c)(3). The Treasury regulations that construe 26 U.S.C. § 411(c)(3) likewise confirm the actuarial equivalence rule.  26 C.F.R. § 1.411(c)-1(e) (the "actuarial equivalence" of the participant's accrued benefit "as determined by the Commissioner.").

43.     In particular, ERISA requires that defined benefit plans offer a "qualified joint and survivor annuity," § 205(a), 29 U.S.C. 1055(a) which is defined in the statute as "***the actuarial equivalent of a single life annuity*** for the life of the participant." ERISA § 205(d)(1), 29 U.S.C. § 1055(d)(1) (emphasis added). This definition is repeated in the Tax Code provision of ERISA at 26 U.S.C. § 417(b)(2) (defining "Qualified Joint and Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant.").

44.     Similarly, the Treasury regulations concerning joint and survivor annuities require that a "qualified joint and survivor annuity ***must be at least the actuarial equivalent*** of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan. Equivalence may be determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2) (emphasis added).

**B.      Non-Forfeitability**

45.      ERISA § 203(a), 29 U.S.C. § 1053(a), sets forth "Nonforfeitability requirements," which require that "an employee's right to his normal retirement benefit is non-forfeitable upon the attainment of normal retirement age[.]"

46.      The Treasury regulation which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements," 26 C.F.R. § 1.411(a)-4(a), states that "adjustments *in excess of reasonable actuarial reductions*, can result in rights being forfeitable." (Emphasis added).

47.      Similarly, the Treasury regulation which concerns "non-forfeitability" in the context of early retirement, 26 C.F.R. § 1.401(a)-14, states that a participant (who retires early) "is entitled to receive not less than the reduced normal retirement benefit described in paragraph (c)(2) of this section." In turn, paragraph (c)(2) entitled "Reduced normal retirement benefit," states that "the reduced normal retirement benefit is the benefit to which the participant would have been entitled under the plan at normal retirement age, *reduced in accordance with reasonable actuarial assumptions*." (Emphasis added).

48.      Thus, distribution of early retirement benefits below their actuarial equivalent value constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a). *Berger v. Zerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 759 (7th Cir. 2003).

**C.      Lump Sum Payments.**

49.      ERISA § 205(g) provides that if a plan offers a lump sum benefit to a participant in place of an annuity,[6] "the present value [of the participant's retirement benefit] shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate[.]" 29 U.S.C. § 1055(g)(3)(A). The applicable mortality table is set by the Treasury to reflect the actual experience of pension plans and projected trends in such experience (*see also* 29 U.S.C. § 1083(h)(3)), and the applicable interest rate is set by the Treasury by regulation.

50.      Thus, any early retirement benefit paid as a single sum should have been no less than the present value of a participant's single life annuity beginning at age 65, using the applicable

---

[6] An annuity provides retirement benefits paid every month from the time the participant retires until she dies.

mortality table and the applicable interest rate set forth in ERISA § 205(g)(3), 29 U.S.C. § 1055(g)(3).  Plan terms which reduce an annuity benefit by applying an Early Retirement Factor before discounting the annuity payments to present value violate ERISA § 205(g)(3), 29 U.S.C. § 1055(g)(3).

## V.  FACTUAL ALLEGATIONS

**A.**     **The AT&T Plan**

51.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(a)(A) and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

52.     Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument (the "Plan Document").

53.     The Plan provides retirement benefits to substantially all U.S. bargained and non-bargained employees of AT&T Inc. and its subsidiaries. As of the 2017 Plan year, the Plan had nearly 500,000 participants and assets valued at approximately $54 billion.

54.     Benefits under the Plan are provided through separate programs, each of which is a separate portion of the Plan that provides benefits to a particular group of participants or beneficiaries. To the best of Plaintiffs' knowledge based on the available information, the separate programs correspond to subsidiary companies which merged with or were acquired by AT&T Inc. over time.

55.     Under the Plan, a participant's normal retirement benefit is expressed as a series of monthly benefit payments beginning at "normal retirement age," and continuing until a participant's death. No payments are made after the participant's death. This monthly benefit is a called a "single life annuity."

56.     If a participant is not married, her default form of payment is a single life annuity.

57.     The Plan defines "Actuarial Equivalence" as "equality in value of the aggregate amounts expected to be received under different times and forms of payment using the Applicable Interest Rate and Applicable Mortality Table."

58.     For example, the Plan calculates actuarial equivalent benefits for participants taking lump sum payments at normal retirement age using the "applicable interest rate" and the "applicable mortality table" specified in 26 U.S.C. § 417(e)(3), which are revised by the Secretary of Treasury on a routine basis to reflect current interest and mortality rates.

59.     Yet, the Plan does not pay the "Actuarial Equivalent" for Early Retirement Benefits nor Joint and Survivor Annuities. Rather, it determines retirement benefits after applying the: (i) Joint and Survivor Annuity Factors; (ii) Early Retirement Factors; or (iii) both.  These "Reduction Factors" result in participants receiving less than the actuarial equivalent of their vested accrued benefit.

**B.     Joint and Survivor Annuity Benefits Under the Plan**

60.     For the Class, the Reduction Factors AT&T Services applies to determine Joint and Survivor Annuities are less than the actuarial equivalent of a participant's single life annuity, as set forth below:

| Table 1. Reduction Factors Used by Plan for Joint and Survivor Annuities ("J&SA") | | | |
|---|---|---|---|
| **Program** | **Reduction Factors** | | |
| | **50% J&SA** | **75% J&SA** | **100% J&SA** |
| AT&T Legacy Bargained Program | 0.88 | 0.82 | N/A |
| AT&T Legacy Management Program | 0.88 | 0.82 | N/A |
| Bargained Cash Balance Program | 0.90 | 0.85 | N/A |
| Bargained Cash Balance Program #2 | 0.90 | 0.85 | N/A |
| DIRECTV Program | 0.88 | 0.82 | 0.78 |
| East Program | 0.90 | 0.85 | N/A |
| Management Cash Balance Program | 0.90 | 0.85 | N/A |
| Midwest Program | 0.85 | 0.83 | N/A |
| Mobility Bargained Program | 0.90 | 0.86 | 0.82 |
| Mobility Program | 0.90 | 0.86 | N/A |
| Non-bargained Program | 0.90 | 0.85 | 0.80 |
| Southeast Management Program | 0.85 | 0.78 | N/A |
| Southeast Program | 0.85 | 0.78 | N/A |
| Southwest Program | 0.90 | 0.85 | 0.80 |
| West Program | 0.90 | 0.85 | 0.80 |
| **ERISA Compliant Factors Calculated Based on 26 U.S.C. § 417(e) Assumptions** | **0.92** | **0.89** | **0.86** |

61.     Thus, for example, if a participant in the Southeast Program has a single life annuity benefit of $1,000 per month starting at age 65, and she retired at age 65 taking a 50% Joint and Survivor Annuity, under the Plan's rules her monthly pension payments would each be (0.85 x $1000) = $850. And, if her spouse survived her, the spouse would receive monthly payments of (50% x $850) = $425. If she had been paid the actuarial equivalent of her benefits, she would have received $920 per month during her lifetime and her surviving spouse would have received $460 per month if the spouse survives her. Thus, she is underpaid approximately $70 per month for her life and, in addition, her surviving spouse is underpaid $35 per month for his or her life.

62.     If instead the same Southeast Program participant elected a 75% Joint and Survivor Annuity, under the Plan's rules her monthly pension payments would each be (0.78 x $1,000) = $780. And, if her spouse survived her, the spouse would receive monthly payments of (75% x $780) = $585. If she had been paid the actuarial equivalent of her benefits, she would have received $667.50.

63.     The Plan does not disclose the assumptions that form the basis of the Joint and Survivor Annuity Reduction Factors. To the best of Plaintiffs' knowledge based on the available information, these factors have not been updated in over a decade, despite dramatic increases in longevity amongst the American public.

64.     The increases in longevity of the American public are reflected in the longevity increases in the mortality tables provided for by 29 U.S.C. 1055(g), which are updated routinely by the Treasury Department.

65.     Table 1 shows the Joint and Survivor Annuity Reduction Factors set forth in the Plan and applied by the Plan Administrator, AT&T Services. Those Joint and Survivor Annuity Reduction Factors are outdated, unreasonable, less than the actuarial equivalent value of a participant's single life annuity benefit, and thus result in the illegal forfeiture of vested benefits under ERISA.

### C.      Early Retirement Benefits Under the Plan

66.      Under the Plan's terms, a participant who retires before Normal Retirement Age (generally 65 years old), is paid an "Early Retirement Benefit." If the participant does not meet certain criteria that are not relevant to Plaintiffs' suit, the value of the Early Retirement Benefit is reduced by the application of an Early Retirement Factor.

67.      In the summer of 2019, the Plan offered a Lump Sum Window to approximately 47,000 former AT&T employees with a vested pension benefit. As part of this Lump Sum Window, the Plan was amended in May of 2019 to allow participants in any Program who would not otherwise be eligible to elect an Early Retirement Benefit, but the participant would also have an Early Retirement Factor applied to the determination of her benefit. These impermissible reductions penalize participants for retiring early.

68.      In connection with the 2019 Lump Sum Window, AT&T Services did not disclose to participants that the application of the Early Retirement Factors would result in the payment of a benefit that was not the actuarial equivalent of a single life annuity. Instead, the Lump Sum Window was portrayed to participants as a "limited-time benefit."

69.      To the best of Plaintiffs' knowledge based on the available information, offering the Lump Sum Windows saves AT&T Inc. money as the Plan sponsor, because it reduces the liabilities of the Plan when participants receive their benefits because of the application of the Reduction Factors.

70.      In the summer of 2018, the Plan offered another Lump Sum Window to former AT&T employees with a vested pension benefit. To the best of Plaintiffs' knowledge based on the available information, as part of this Lump Sum Window, participants in the Plan could elect an Early Retirement Benefit, but the participant would also have an Early Retirement Factor applied to the determination of her benefit.

71.      The Early Retirement Factors are applied to pension benefits paid before age 65, independent of what form of benefit the participant actually receives (e.g., single life annuity, joint and survivor annuities, or lump sum benefit). The Factors are as follows:

| Table 2: Reduction Factors Used by Plan for Early Retirement Benefits | | | | | | |
|---|---|---|---|---|---|---|
| **Program** | **Early Retirement Factor at Given Age*** | | | | | |
| | **65** | **60** | **55** | **50** | **45** | **40** |
| AT&T Legacy Bargained Program | 1.000 | 0.600 | 0.380 | 0.260 | 0.170 | 0.114 |
| AT&T Legacy Management Program | 1.000 | 0.600 | 0.380 | 0.260 | 0.170 | 0.114 |
| East Program | 1.000 | 0.580 | 0.370 | 0.240 | 0.160 | 0.110 |
| Midwest Program | 1.000 | 0.580 | 0.370 | 0.240 | 0.160 | 0.110 |
| Mobility Bargained Program | 1.000 | 0.580 | 0.370 | 0.240 | 0.160 | 0.110 |
| Nonbargained Program | 1.000 | 0.592 | 0.376 | 0.251 | 0.175 | 0.125 |
| Southeast Management Program | 1.000 | 0.580 | 0.370 | 0.240 | 0.160 | 0.110 |
| Southeast Program | 1.000 | 0.580 | 0.370 | 0.240 | 0.160 | 0.110 |
| Southwest Program | 1.000 | 0.580 | 0.370 | 0.240 | 0.160 | 0.110 |
| West Program | 1.000 | 0.592 | 0.376 | 0.251 | 0.175 | 0.125 |
| **ERISA Compliant Factors Calculated Based on 26 U.S.C. § 417(e) Assumptions** | **1.000** | **0.709** | **0.517** | **0.381** | **0.293** | **0.228** |

\* This table reflects the Early Retirement Factors except for participants who satisfy the Modified Rule of 75 upon termination of employment with AT&T.

72.     Additionally, for each additional month younger a participant is when she starts receiving benefits, the Early Retirement Factor is increased by one-twelfth of the difference between the Early Retirement Factor of the participant's attained age and the factor at the participant's next highest age.

73.     The Early Retirement Factors generated when using a reasonable interest rate and reasonable mortality table (e.g., the one prescribed by 26 U.S.C. § 417(e)), are substantially more favorable for participants than those that the Plan uses, as shown in Table 2 above.

74.     The percentage of benefits forfeited because of the ERISA non-compliant Reduction Factors applied to Early Retirement Benefits under the Plan's terms ranged from 15-52%.

75.     The Plan does not disclose the assumptions that form the basis of the Early Retirement Factors. To the best of Plaintiffs' knowledge based on the available information, these Factors have not been updated in over a decade, despite dramatic increases in longevity amongst the American public.

76.     As alleged above, the increases in longevity of the American public are reflected in the longevity increases in the mortality tables provided for by 29 U.S.C. 1055(g), which are updated routinely by the Treasury Department.

77.     The Plan's Early Retirement Factors are outdated, unreasonable, less than the actuarial equivalent value of a participant's single life annuity benefit, and thus result in the illegal forfeiture of vested benefits under ERISA.

78.     In fact, the Plan as written provides some (but not all) participants with the "actuarial equivalent" value of their benefit. In particular, the Plan does not determine "actuarial equivalence" for Joint and Survivor Annuities or Early Retirement Benefits, and instead determines those benefits using the excessive "Reduction Factors" set forth in Tables 1 and 2.

79.     Put differently, the Plan evidences knowledge of the actuarial equivalence requirement of ERISA yet fails to utilize an actuarial equivalence determination for Joint and Survivor Annuities or Early Retirement Benefits.

80.     It is unreasonable for the Plan Administrator to provide actuarially equivalent benefits to some but not all participants in the Plan.

81.     Because ERISA requires that plan fiduciaries treat all plan participants equally and equitably, the Plan Administrator must act loyally and prudently to ensure that all participants are receiving the actuarial equivalence of their accrued benefits. The Early Retirement and Joint and Survivor Annuity Factors that AT&T Services used to determine benefits left participants worse off than if they took a single life annuity at normal retirement age.

82.     By using unreasonable Early Retirement and Joint and Survivor Annuity Factors to determine benefits, rather than ensuring that all Plan participants received the actuarial equivalent of their ERISA protected benefits, AT&T Services and AT&T Inc. caused Plaintiffs and the Class more than tens of millions of dollars in losses.

# VI.  CLASS ALLEGATIONS

83.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following Class:  All participants in the Plan (and their beneficiaries).

**A.     Numerosity:**

84.     The members of the Class are so numerous that joinder of all members is impractical. To the best of Plaintiffs' knowledge based on the available information, the Class includes well over one hundred thousand participants.  According to governmental filings, there are over 189,950 active Plan participants in the Plan and more than 172,284 participants who are retired and receiving benefits under the Plan.

**B.     Commonality:**

85.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A.     Whether the Early Retirement Factors and Joint and Survivor Annuity Factors applicable to the Class reduce their pension benefits below the actuarial equivalent value of those benefits in violation of ERISA?

B.     Whether the Early Retirement Factors and Joint and Survivor Annuity Factors applicable to the Class cause Plan participants in the Class to illegally forfeit their vested benefits?

C.     Whether AT&T Services violated its ERISA fiduciary duties of loyalty, prudence, and to follow the Plan Document *only if* its terms are consistent with ERISA?

D.     Whether the Plan should be reformed to eliminate any Early Retirement Factors and Joint and Survivor Annuity Factors which reduce pension benefits paid or payable to Plan participants below the actuarial equivalent value of those benefits?

E.     Whether Plaintiffs and members of the Class should be paid additional benefits under the Plan as reformed to provide them the difference between the benefit the Plan previously determined to be their reduced benefit and the actuarially equivalent value of their benefit?

**C.     Typicality:**

86.     Plaintiffs' claims are typical of the claims of the members of the Class because they arise out of the same policies and practices as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

**D.      Adequacy:**

87.      Plaintiffs will fairly and adequately represent the Class and they have retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

**E.      Rule 23(b)(1) Requirements:**

88.      The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants

89.      The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements:**

90.      Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.      Rule 23(b)(3) Requirements:**

91.      If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include: those listed above in Section VI.B.

92.      Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole. Individual Class members do not have an interest in controlling the prosecution of these claims in

individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally.

93.     Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein.

94.     There are no difficulties in managing this case as a class action.

## VII.  CAUSES OF ACTION

**COUNT I: VIOLATION OF ERISA'S ACTUARIAL EQUIVALENCE REQUIREMENT**
**§ 204(C)(3), 29 U.S.C § 1054(C)(3)**
**(AGAINST AT&T SERVICES AND AT&T INC.)**

95.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

96.     ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) requires "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [here 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit . . . ."

97.     Relevant here, the Plan's alternative forms of benefit include:

- 50%, 75%, and 100% Joint and Survivor Annuities
- Early Retirement Benefits

98.     Thus, under § 204(c)(3), 29 U.S.C. § 1054(c)(3), if a participant commences her retirement benefit before age 65, or takes her benefit as a Joint and Survivor Annuity, or both, and the Plan reduces the participant's benefit, the reduced benefit must be the actuarial equivalent of that benefit expressed as a single life annuity benefit starting at age 65.

99.     The Plan defines "Actuarial Equivalence" as "equality in value of the aggregate amounts expected to be received under different times and forms of payment using the Applicable Interest Rate and Applicable Mortality Table." Yet the Plan does not make actuarial equivalence determinations before paying Joint and Survivor Annuities nor Early Retirement Benefits. Rather, it

uses preset Reduction Factors, which result in payment of less than the actuarial equivalent of the participant's vested accrued benefit. This violates ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3).

100.    AT&T Services, as the Plan Administrator, was and is responsible for paying all Plan participants the full value of their vested retirement benefits upon retirement. Instead, AT&T Services determines benefits using outdated, unreasonable, and non-actuarially equivalent Reduction Factors for Joint and Survivor Annuities and Early Retirement Benefits. As such, AT&T Services violated ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) by impermissibly paying Plan participants less than the actuarial equivalent of their ERISA-protected retirement benefits.

101.    AT&T Inc., as the Plan Sponsor, was and is responsible for maintaining Plan terms that are consistent with ERISA. To the best of Plaintiffs' knowledge based on the available information, for over a decade AT&T Inc. failed to update the Reduction Factors for Joint and Survivor Annuities and Early Retirement Benefits to conform with ERISA's actuarial equivalence requirement. As such, AT&T Inc. violated ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), by maintaining Plan terms which do not conform with ERISA's actuarial equivalence requirement.

102.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

103.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against AT&T Services and AT&T Inc. to redress the violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to: a declaration that the Reduction Factors contained in the Plan that are used to calculate Joint and Survivor Annuities and Early Retirement Benefits violate ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); reformation of the Plan to comply with ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); and compensation for the amounts owed to all Class members in conformance with the reformed Plan.

## COUNT II: VIOLATION OF ERISA'S ANTI-FORFEITURE RULES
## § 203(A), 29 U.S.C. § 1053(A)
## (AGAINST AT&T SERVICES AND AT&T INC.)

104.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

105.    ERISA § 203(a) of ERISA, 29 U.S.C. § 1053(a), sets forth ERISA's "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable[.]" The Treasury regulation, 26 C.F.R. § 1.411(a)-4(a), which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements" state that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."

106.    Similarly, the Treasury regulation, 26 C.F.R. § 1.411(a)-4(c), which describe non-forfeitability in the context of early retirement, states that a participant who retires early "is entitled to receive not less than the reduced normal retirement benefit described in paragraph (c)(2) of this section." In turn, paragraph (c)(2) entitled "Reduced normal retirement benefit," states that "the reduced normal retirement benefit is the benefit to which the participant would have been entitled under the plan at normal retirement age, reduced in accordance with reasonable actuarial assumptions."

107.    Thus, paying a participant less than the actuarial equivalent of her accrued benefit results in an illegal forfeiture of her benefits.  ERISA § 203(a), 29 U.S.C. § 1053(a).

108.    As explained above, Class members received less than the actuarial equivalent of their benefits (expressed as single life annuities beginning at age 65) because the Plan's Reduction Factors for Joint and Survivor Annuities and Early Retirement Benefits provided them with less than the actuarial equivalent of their ERISA-protected benefits.

109.    AT&T Services, as the Plan Administrator, was and is responsible for paying all Plan participants the full value of their non-forfeitable retirement benefits. Instead, AT&T Services determined benefits using outdated and non-actuarially equivalent Reduction Factors for Joint and Survivor Annuities and Early Retirement Benefits. As such, AT&T Services caused and causes Plan participants to forfeit their ERISA-protected benefits. Therefore, AT&T Services, violated ERISA § 203(a), 29 U.S.C. § 1053(a).

110.    AT&T Inc., as the Plan Sponsor, was and is responsible maintaining Plan terms that are consistent with ERISA. To the best of Plaintiffs' knowledge based on the available information, for over a decade AT&T Inc. failed to update the Reduction Factors for Joint and Survivor Annuities and Early Retirement Benefits to ensure that they provided participants with the actuarial equivalent of their retirement benefits. As such, AT&T Inc. violated ERISA § 203(a), 29 U.S.C. § 1054(a), by maintaining Plan terms that result in an illegal forfeiture of benefits.

111.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

112.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against AT&T Services and AT&T Inc. to redress their violations of ERISA § 203(a), 29 U.S.C. § 1053(a), including, but not limited to: a declaration that the Reduction Factors contained in the Plan that are used to calculate Joint and Survivor Annuities and Early Retirement Benefits violate ERISA § 203(a), 29 U.S.C. § 1053(a); reformation of the Plan to comply with ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); and compensation for the amounts owed to all Class members in conformance with the reformed Plan.

### COUNT III: BREACH OF FIDUCIARY DUTY
### (AGAINST AT&T SERVICES)

113.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

114.    During all relevant times, AT&T Services was a Named Fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms (unless those Plan terms themselves violated ERISA).

115.    ERISA § 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A), requires AT&T Services as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, to act loyally in the best interest of all Plan participants, including the Class members.

116.    ERISA § 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B), requires that a AT&T Services, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, act prudently when determining benefits owed to Plan participants, which includes ensuring that all benefits paid pursuant to the Plan conformed with ERISA's statutory requirements and Treasury regulations.

117.    ERISA § 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), requires that a fiduciary with respect to a plan shall discharge their duties "solely in the interest of participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan" insofar as such documents are "consistent with" subchapters I and III of ERISA.

118.    AT&T Services breached these fiduciary duties by, *inter alia*:

A.    Disloyally reducing Class members' pension benefits through application of "Early Retirement" Factors" and "Joint and Survivor Annuity Factors" which resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit and the Plan sponsor saving money;

B.    Failing to act prudently when determining benefits owed to Plan participants by, *inter alia*, ensuring that all benefits paid are/were in conformed with ERISA's actuarial equivalence and non-forfeitability requirements, which caused Class members to receive less than the full value of their vested accrued benefit;

C.    Following Plan terms which violate ERISA because they result in Plan participants receiving less than the actuarial equivalent of their vested accrued benefit and result in Plan participants forfeiting a portion of their vested accrued benefit;

119.    As a direct and proximate result of these fiduciary breaches, Plaintiffs and Class members lost tens of millions of dollars in vested accrued pension benefits.

120.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

121.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available equitable relief against AT&T Services to redress their violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), including, but not limited to, a declaration that the Reduction Factors contained in the

Plan that are used to calculate Joint and Survivor Annuities and Early Retirement Benefits for the Class violate ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), reformation of the Plan to comply with ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), and compensation for the amounts owed to all Class members in conformance with the reformed Plan.

### VIII.  PRAYER FOR RELIEF

Plaintiffs pray that judgment be entered against Defendants on all claims and seek the following relief:

A.      Declaring that the Plan's Reduction Factors used to determine Early Retirement Benefits and Joint and Survivor Annuities violate ERISA's actuarial equivalence requirement set forth in § 204(c)(3), 29 U.S.C. § 1054(c)(3) and violate ERISA's anti-forfeiture provision at § 203(a), 29 U.S.C. § 1053(a).

B.      Reforming the Plan (or if necessary ordering Defendants to reform the Plan) to: (i) eliminate any Reduction Factors used to determine Early Retirement Benefits and Joint and Survivor Annuities, which result in participants receiving less than the actuarial equivalent of their pension benefit expressed as a single life annuity commencing at normal retirement age or 65, whichever is earlier and (ii) bring the Plan into full compliance with ERISA.

C.      Ordering Defendants to correct and recalculate all benefits paid to the Class members based on the Plan as reformed and to pay all unpaid benefits owed to them (the difference between the benefits they were paid previously and the actuarial equivalent value of their benefit).

D.      Ordering Defendants to provide an "accounting" of all prior payments of benefits under the Plan to determine the proper amounts that should have been paid.

E.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the AT&T Plan and ordering Defendants to pay future benefits in accordance with the Reformed Plan and in accordance with ERISA's requirements.

F.      Disgorgement of any benefits the Defendants received or enjoyed due to the improper reduction of benefits for the Class, and any profits earned therefrom.

1   G.   Surcharge from Defendants totaling the amount participants suffered in lost/reduced

2   benefits;

3   H.   Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to

4   law.

5   I.   Awarding to Plaintiffs attorneys' fees, expenses and/or taxable costs, as provided by

6   the common fund doctrine, ERISA section 502(g), 29 U.S.C. § 1132(g), and/or other applicable

7   doctrine.

8   J.   Awarding, declaring or otherwise providing Plaintiffs and the Class any other

9   appropriate equitable relief under ERISA section 502(a), 29 U.S.C. § 1132(a), or any other

10   applicable law, that the Court deems just and proper.

11

12   Dated:  October 1, 2019

13   Respectfully submitted,

14

15    /s/Michelle C. Yau
      Michelle C. Yau (*Pro Hac Vice* forthcoming)
16    Mary J. Bortscheller *Pro Hac Vice* forthcoming)
      Daniel J. Sutter (*Pro Hac Vice* forthcoming)
17    Cohen Milstein Sellers & Toll PLLC
      1100 New York Ave. NW ● Fifth Floor
18    Washington, DC 20005
      (202) 408-4600
19    (202) 408-4699

20

21    Todd Jackson (Cal. Bar No. 202598)
      Nina Wasow (Cal. Bar No. 242047)
22    FEINBERG, JACKSON, WORTHMAN & WASOW, LLP
      2030 Addison Street ● Suite 500
23    Berkeley, CA 94704
      Telephone: (510) 269-7998
24    Fax: (510) 269-7994

25

26    ***Attorneys for Plaintiffs***

27

28

CLASS ACTION COMPLAINT                          25