Nancy G. Ross (*pro hac vice*)
nross@mayerbrown.com
Brian D. Netter (*pro hac vice*)
bnetter@mayerbrown.com
Abigail M. Bartine (SBN 326993)
abartine@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois  60606-4637
Telephone: (312) 782-0600
Facsimile:  (312) 701-7711

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amy Eliason, Angela Hueckel and Lindie Lawrence, on behalf of themselves and all others similarly situated, | Case No. 4:19-cv-6232-SK |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE** |
| vs. | Date:        February 24, 2020 |
| AT&T Inc., AT&T Services, Inc., and the AT&T Pension Benefit Plan, | Time:        9:30 a.m. |
| Defendants. | Judge:        Hon. Sallie Kim |
| | Action Filed: 10/1/19 |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that on Monday February 24, 2020, at 9:30 a.m., or as soon

3  thereafter as the matter may be heard before the Honorable Sallie Kim in the United States

4  District Court for the Northern District of California, Courtroom C, located on the 15th Floor of

5  the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendants

6  AT&T Inc., AT&T Services, Inc., and the AT&T Pension Benefit Plan will and hereby do move

7  the Court to dismiss the action pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil

8  Procedure or, in the alternative, to transfer the action to the United States District Court for the

9  Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

10      The motion is made on the grounds that the Court lacks jurisdiction over the case because

11  Plaintiffs do not have standing to assert their claims against Defendants as they have not suffered

12  an injury.  Moreover, the Complaint fails to state a claim for the equitable remedy of reformation

13  and improperly names AT&T Inc. as a Defendant.  Plaintiffs have also failed to exhaust their

14  remedies, as required for a § 502(a)(1)(B) claim, which is ultimately the claim Plaintiffs make

15  here.  If the Court denies Defendants' motion to dismiss the Complaint in full or in part,

16  Defendants request that the Court transfer the remaining case to the more appropriate venue of the

17  United States District Court for the Northern District of Texas for the convenience of the parties

18  and witnesses and in the interest of justice.

19

20  Dated: December 2, 2019                     Respectfully Submitted,

21

22                                             By:  /s/ Nancy G. Ross

23                                                  Nancy G. Ross
                                                   Brian D. Netter
24                                                 Abigail M. Bartine

25                                                 Attorneys for Defendants

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.     BACKGROUND ......................................................................................................... 2

     A.     Legal Framework ........................................................................................... 3

     B.     The AT&T Pension Plan ................................................................................ 4

II.    ARGUMENT .............................................................................................................. 5

     A.     Plaintiffs Lack Article III Standing ............................................................... 5

         i.      Legal Standard ................................................................................... 5

         ii.     Plaintiffs Have Not Suffered an Injury ............................................ 6

     B.     Plaintiffs Additionally Fail to State a Claim for Relief ................................ 9

         i.      Legal Standard ................................................................................... 9

         ii.     Grounds for Dismissal .................................................................... 10

             a.     Plaintiffs Fail to Allege Facts Warranting Reformation ............... 10

             b.     Plaintiffs Failed to Exhaust Their Administrative Remedies ........ 11

             c.     Plaintiffs Fail to State a Claim Against AT&T Inc. ...................... 12

     C.     The Case Should be Transferred to Texas Federal Court ........................... 13

         i.      Legal Standard ................................................................................. 13

         ii.     Plaintiffs' Lawsuit Should be Transferred to the Northern District of Texas ......................................................................................... 13

             a.     Section 1404(a) Affords this Court Wide Discretion to Transfer Cases ............................................................................................ 13

             b.     This Case Could Have Been Brought in the Northern District of Texas ........................................................................................... 14

             c.     Plaintiffs' Claims Lack Any Meaningful Connection to This Forum ........................................................................................... 15

             d.     The Remaining Factors Compel Transfer ..................................... 16

III.   CONCLUSION ......................................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
5
    556 U.S. 662 (2009) ......................................................................................................9, 10

6

*Bell Atl. Corp. v. Twombly*,
7
    550 U.S. 544 (2007) ............................................................................................................9

8

*CGI Techs. & Solutions, Inc. v. Rose*,
    2010 WL 11684296 (W.D. Wash. Oct. 21, 2010) ...................................................12

9

*Clapper v. Amnesty Int'l, USA*,
10
    568 U.S. 398 (2013) ............................................................................................................6

11

*DaVita, Inc. v. Amy's Kitchen, Inc.*,
    379 F.Supp.3d 960 (N.D. Cal. 2019) ..........................................................................5

12

13

*Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharmaceuticals*,
    2002 WL 31655328 (N.D. Cal. Nov. 21, 2002)........................................................17

14

*Diaz v. United Agr. Employee Welfare Ben. Plan & Trust*,
15
    50 F.3d 1478 (9th Cir. 1995)...........................................................................................11

16

*Earth Island Institute v. Quinn*,
    56 F. Supp. 3d 1110 (N.D. Cal. 2014) ...............................................................13, 14

17

18

*Fabus Corp. v. Asiana Exp. Corp.*,
    2001 WL 253185 (N.D. Cal. Mar. 5, 2001) ............................................................16

19

*Italian Colors Rest. v. Am. Express Co.*,
20
    2003 WL 22682482 (N.D. Cal. Nov. 10, 2003)..........................................15, 16, 17

21

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000)................................................................................14, 15

22

*Josef K. v. California Physicians' Serv.*,
23
    2019 WL 2342245 (N.D. Cal. June 3, 2019) ............................................................10

24

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
25
    350F.3d 1018, 1022 (9th Cir. 2003)...............................................................................9

26

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987)........................................................................................16

27

*Lujan v. Defenders of Wildlife*,
28
    504 U.S. 555 (1992).......................................................................................................6, 9

*Ming Hsu v. VTEX Energy, Inc.*,
   2007 WL 1232056 (N.D. Cal. Apr. 26, 2007) ...........................................................................16

*Miniace v. Pacific Maritime Ass'n*,
   2007 WL 963160 (N.D. Cal. Mar. 30, 2007) ..............................................................................10

*Northern California River Watch v. Ecodyne Corp.*,
   2013 WL 2645767 (N.D. Cal. June 12, 2013) ..............................................................................7

*Park v. Dole Fresh Vegetables, Inc.*,
   964 F.Supp.2d 1088 (N.D. Cal. 2013) ......................................................................................16

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004).....................................................................................................7

*Skinner v. Northrop Grumman Retirement Plan B*,
   673 F.3d 1162 (9th Cir. 2012)...................................................................................................10

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
   770 F.3d 1281 (9th Cir. 2014)...................................................................................................12

*Spokeo, Inc. v. Robbins*,
   136 S. Ct. 1540 (2016)..................................................................................................................6

*Steckman v. Hart Brewing Inc.*,
   143 F.3d 1293 (9th Cir. 1998).....................................................................................................9

*Steel Co. v. Citizens for Better Environment*,
   523 U.S. 83 (1998).......................................................................................................................6

*Stewart Org., Inc., v. Ricoh Corp.*,
   487 U.S. 22 (1988).....................................................................................................................13

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003)........................................................................................................2

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)...................................................................................................................14

*Ventress v. Japan Airlines*,
   486 F.3d 1111 (9th Cir. 2007)...................................................................................................13

*Vu v. Ortho-McNeil Pharmaceutical, Inc.*,
   602 F.Supp.2d 1151 (N.D. Cal. 2009) ......................................................................................17

*Wood v. City of San Diego*,
   678 F.3d 1075 (9th Cir. 2012).....................................................................................................7

**Statutes**

26 U.S.C. §§ 417(e), 430(h) .................................................................................................4

28 U.S.C. § 1404(a) ...........................................................................................1, 13, 14, 18

29 U.S.C. § 1054(c)(2)(B) ..................................................................................................4

29 U.S.C. § 1054(c)(3) ....................................................................................................4, 5

29 U.S.C. § 1055(a) ............................................................................................................4

29 U.S.C. § 1055(d) ............................................................................................................4

29 U.S.C. § 1055(g)(3), 1083(h) ........................................................................................4

29 U.S.C. § 1132(a)(1)(B) ................................................................................................11

29 U.S.C. § 1132(e)(2) ......................................................................................................14

I.R.C. § 417(e) ........................................................................................................... *passim*

ERISA § 417(e)(3)(C) .........................................................................................................7

ERISA § 502(a)(1)(B) ...................................................................................................1, 11

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs are early retirees whose complaint is based on the mistaken assertion that the lump sum payment they elected to receive under the AT&T Pension Benefit Plan (the "Plan") was calculated incorrectly.  Specifically, Plaintiffs point to two calculations that they claim undervalue pension benefits for Plan participants who retire and elect to receive their pension benefits early.  First, Plaintiffs assert that when Plan participants retire early Defendants utilize the wrong set of "Early Retirement Factors."  Second, Plaintiffs assert that if participants elect to alter the default terms of their annuity (for example, by selecting more generous benefits for a surviving spouse), the Plan applies "Joint and Survivor Annuity Factors" that, Plaintiffs allege, further undervalue accrued benefits.

Even taking Plaintiffs' allegations as true, they have not been harmed by either method of calculation.  Plaintiffs contend that rather than the Plan applying "Early Retirement Factors" or "Joint and Survivor Annuity Factors," their benefits should have been computed by using an interest rate and mortality table created by statute (I.R.C. § 417(e)), and periodically fixed by the Secretary of the Treasury (I.R.C. § 417(e)(3)(B)-(C)).  Relying on that statute, Plaintiffs correctly assert that for any lump sum "cash outs," the present value of the vested benefits must be computed using the Secretary's applicable interest rate and mortality table.  I.R.C. § 417(e).

Therein lies the Complaint's first fatal defect.  By the terms of the Plan, the value of the lump sum Plaintiffs elected in fact *was* computed using the § 417(e) factors.  And the "Early Retirement Factors" and "Joint and Survivor Annuity Factors" about which Plaintiffs complain ***were not used and did not*** determine the value of their lump sum distributions.  As such, Plaintiffs lack Article III standing to challenge those factors.

Plaintiffs' Complaint is defective for a variety of other reasons, as well.  For one, Plaintiffs ask this Court to reform the Plan to replace the disputed factors.  The equitable remedy of reformation, however, is allowed under ERISA only if there has been mistake or fraud, neither of which has been alleged by Plaintiffs here.  Indeed, when their allegations are laid bare, Plaintiffs are really pursuing the more commonplace claim for benefits under ERISA § 502(a)(1)(B), although they have not asked for relief under that provision in their Complaint.  Nor

1  could they, as they have failed to exhaust the administrative procedures provided by the Plan and

2  required by ERISA for immediate and efficient review of their claims by the Plan Administrator.

3  Finally, Plaintiffs' claims against AT&T Inc., the Plan Sponsor, fail because their Complaint

4  challenges the Plan Administrator's calculation of their claim, a process over which the Plan

5  Sponsor has no involvement or control.

6      Even if Plaintiffs were able to state a legitimate claim, they have filed suit in the wrong

7  forum.  The events allegedly giving rise to Plaintiffs' claims have no connection to the Northern

8  District of California aside from the residence of one of the three named Plaintiffs.  Instead, all

9  aspects of Plan design and administration take place in Dallas, Texas, where each Defendant and

10  the Plan-related evidence reside.  In fact, the Plan terms require application of Texas law to the

11  extent not preempted by federal law.  Transfer to the Northern District of Texas would allow a

12  court in that state to decide matters of Plan administration and make access to witnesses and other

13  evidence substantially more convenient for both parties.  Transfer would not impact Plaintiffs'

14  litigation of their claims, particularly as one named Plaintiff resides in the Dallas area, and one of

15  two counsel representing Plaintiffs lives outside of this jurisdiction.

16  **I.      BACKGROUND[1]**

17      Originally established in 1984, the Plan is a defined benefit plan sponsored by AT&T Inc.

18  Compl., ¶¶ 30-31; Ross Decl. ¶ 2, Ex. A[2] (AT&T Pension Benefit Plan Document), §§ 2.1,

19  3.1(88).  AT&T Services, Inc. ("AT&T Services") is the Plan Administrator.  Compl., ¶ 32; Ex.

20  A, §§ 3.1(87), 17.1.  The Plan Administrator is responsible for "the general administration of the

21  Plan" and is conferred "complete and absolute discretion to interpret the Plan and all matters of

22  _____

23  [1] This background information is based on the allegations in the Complaint, which are presumed true solely for purposes of this motion, and documents incorporated by reference in the

24  Complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to the complaint, it may be incorporated by reference into a complaint if the

25  plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims.").

26

27  [2] The Plan and its Programs, discussed further below, are incorporated by reference throughout the Complaint.  *See, e.g.*, Compl. ¶¶ 9, 13, 51-82.  These documents are also central to and

28  "form[] the basis of" Plaintiffs' claims and are therefore properly considered on a motion to dismiss.  *Ritchie*, 342 F.3d at 908.

1   fact with respect to such duties and obligations." Ex. A, §§ 17.1, 17.2.  As the Plan Sponsor,

2   AT&T Inc. established the Plan but is not responsible for its administration or interpretation.  Ex.

3   A., § 19.1.

4         Plaintiffs Amy Eliason, Angela Hueckel, and Lindie Lawrence are former employees of

5   AT&T subsidiaries and participants in the Plan.  Compl. ¶¶ 26-28.  Each was eligible to begin

6   receiving a monthly pension annuity commencing at age 65.  *Id.* ¶¶ 3, 26-28.  The Plan was

7   amended to permit lump sum distributions during a limited window period, and each Plaintiff

8   decided to take advantage of that opportunity and elected to receive her benefit early as a lump

9   sum.  *Id.* ¶¶ 26-28.

10        **A.      Legal Framework**

11        ERISA supplies a uniform, national regulatory framework for employer-sponsored

12   retirement plans.  Such plans come in two principal types: defined benefit and defined

13   contribution.  In a defined benefit plan, sometimes called a "pension plan," participants earn the

14   right to receive a specified periodic benefit starting at the age of retirement.  In a defined

15   contribution plan, such as a 401(k) plan, the amount of a participant's benefit at retirement is

16   influenced by market conditions or by the participant's investment elections.

17        Although they are not as elastic as defined contribution plans, pension plans are not

18   entirely inflexible.  Such plans may authorize plan participants to convert their vested benefit—a

19   stream of future payments—into something comparable:

20        <u>Lump sums</u>.  A plan may permit participants to trade their annuity for a single, cash

21   payment.  When a plan provides for a lump sum payout, ERISA prescribes a particular method

22   for valuing the lump sum: the plan may distribute the "present value" of the annuity.  In general, a

23   future payment (or stream of payments) is converted to its present value by discounting future

24   payments at a specified interest rate, to account for the time-value of money.  In the case of an

25   annuity, the payments continue until an uncertain future date—the date on which the participant

26   (or the participant and her spouse) dies—so future payments must also be discounted by the

27   actuarial probability as to when the annuitant(s) will die.  In the case of lump sums, ERISA

28   specifies the interest rate to be used for discounting purposes and the mortality table to be used

1   for projecting annuitant lifespans.  29 U.S.C. § 1055(g)(3), 1083(h); 26 U.S.C. §§ 417(e), 430(h).

2   <u>Optional forms of benefit</u>.  ERISA-governed pension plans may (and, in some

3   circumstances, must) offer optional forms of benefit.  Optional forms of benefit modulate the

4   amount that will be paid based on the form elected and how long the benefit will be paid.

5   For example, although ERISA sets the default pension benefit as a single life annuity (29

6   U.S.C. § 1054(c)(3)), plans must provide joint-and-survivor annuities to vested participants who

7   are married.  29 U.S.C. § 1055(a).  In a joint-and-survivor annuity, if the participant's spouse

8   outlives the participant, the spouse continues to receive a benefit for his life.  The monthly benefit

9   for a joint-and-survivor annuity will be less than the monthly benefit for a single-life annuity,

10  because there are more expected payments in the case of the former.[3]

11  In addition, although pension benefits are commonly paid out to participants beginning at

12  age 65 (29 U.S.C. § 1054(c)(2)(B)), a pension plan may allow participants to begin receiving their

13  benefits early.  A participant who elects to begin receiving pension benefits early will typically

14  receive a smaller monthly benefit, because the payments begin earlier and are expected to last

15  longer.  In the case of these optional forms of benefit, ERISA provides that the amount of the

16  benefit "shall be the actuarial equivalent" of the normal form of benefit.  29 U.S.C. § 1054(c)(3).

17  But the statute does not specify which assumptions should be made in the actuarial conversion.

18  **B.      The AT&T Pension Plan**

19  The Plan provides eligible AT&T employees with certain retirement, disability, death, and

20  other benefits.  Ex. A, § 1.1.  The Plan's benefits are provided under various "Component Pension

21  Programs" ("Programs").  *Id.* § 1.4; Compl., ¶ 54.  Each Program establishes the particular rules

22  governing the benefits that are offered under the Plan for a defined population of eligible

23  employees, although they are expressly incorporated into the Plan and are subject to the Plan's

24  general terms and conditions.  *Id.*[4]

25  ────────────────────

26  [3] The spouse's benefit will not necessarily be 100% of the original benefit; it might be only 50%.
     29 U.S.C. § 1055(d).  Some plans offer a range of joint-and-survivor permutations.

27  [4] This motion will cite relevant provisions from the Programs in which the named Plaintiffs

28  participated: Legacy Bargained Program (Amy Eliason), Nonbargained Program (Angela
     Hueckel), and Southwest Program (Lindie Lawrence).  Compl., ¶¶ 26-28.

- 4 -

1    Relevant to this case, each Program offers eligible employees a "Program Pension

2    Benefit," which is a company-paid retirement benefit that they receive at a specified retirement

3    age. Ex. A., § 3.1(97); s*ee also*, *e.g.*, Ross Decl. ¶ 3, Ex. B (Southwest Program), § 7.1.  Under

4    most circumstances, these monthly payments begin at age 65, which is referred to throughout the

5    Plan and Programs as the "Normal Retirement Age."  *See*, *e.g.*, Ex. A., § 3.1(73); Ex. B, §

6    3.1(21); Compl., ¶ 55.  The applicable Program explains the form of the benefit that the

7    participant receives.

8    Instead of receiving a Program Pension Benefit at the Normal Retirement Age, under

9    certain circumstances a participant may elect to receive her pension benefit early.  Ex. A., §

10   3.1(29) (defining "Early Retirement Pension" as "a Normal Retirement Pension reduced as

11   provided in the applicable Component Pension Program for commencement prior to Normal

12   Retirement Age").  Early Retirement Pensions are "reduced to reflect such Program Participant's

13   younger age and earlier commencement of payments" in order to ensure that the participant

14   receives the present value of the same total amount of the Normal Pension Benefit but over a

15   longer period of time.  Ross Decl. ¶ 4, Ex. C (Legacy Bargained Program), § 7.3.1.[5]

16   **II.    ARGUMENT**

17          **A.    Plaintiffs Lack Article III Standing**

18                 **i.    Legal Standard**

19   "If the court determines at any time that it lacks subject-matter jurisdiction, the court must

20   dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Standing is "a jurisdictional prerequisite to a

21   federal court's consideration of any claim."  *DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F.Supp.3d

22   960, 967  (N.D. Cal. 2019).  To confer subject matter jurisdiction on a federal court, a plaintiff

23

24   ─────────────────────────

25   [5] The Early Retirement Pension is generally calculated by taking the participant's Normal
     Retirement Pension and reducing it by an "early retirement factor."  These early retirement
     factors are set forth in each Program and are used to ensure that a Plan participant's receipt of an
26   Early Pension Benefit is "actuarially equivalent" to the benefit the Plan participant would
     otherwise receive at her Normal Retirement Age, as required by ERISA.  *See* 29 U.S.C. §
27   1054(c)(3) ("in the case of any defined benefit plan, if an employee's accrued benefit is to be
     determined as an amount other than an annual benefit commencing at normal retirement age . . .
28   the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit").

1    must allege and establish that she (1) has suffered an injury in fact (2) that is fairly traceable to

2    the challenged conduct of the defendant and (3) is likely to be redressed by a favorable judicial

3    decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The party invoking

4    federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561.

5    When a plaintiff lacks standing to assert her claims, the case must be dismissed for want of

6    jurisdiction. Fed. R. Civ. P. 12(b)(1).

7            This case turns on the "[f]irst and foremost" of standing's elements: injury in fact. *Steel*

8    *Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). This requirement demands a

9    showing that the plaintiff has suffered an invasion of a legally protected interest that is

10   "concrete," "particularized," and "actual or imminent." *Lujan*, 504 U.S. at 560. An injury is

11   concrete when  it is *de facto* – "real" rather than "abstract," something that "actually exist[s]."

12   *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016). An injury is particularized when it

13   "affect[s] the plaintiff in a personal and individual way." *Id.* And an injury is actual or imminent

14   when it exists or is at least "certainly impending" and not merely "conjectural" or "hypothetical."

15   *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013); *Lujan*, 504 U.S. at 560.

16                        **ii.        Plaintiffs Have Not Suffered an Injury**

17           Plaintiffs' complaint is premised on the theory that Defendants have violated ERISA by

18   using plan-based reduction factors to compute their lump sum benefits under the Plan, instead of

19   using a present-value calculation of the age-65 pension benefit that employs the applicable

20   mortality table and the applicable interest rate prescribed by the Department of the Treasury.

21   Compl. ¶ 49. Each Plaintiff alleged that she elected to participate in a limited-time eligibility

22   opportunity that was made available for certain participants to receive their entire pension benefit

23   in the form of a full lump sum payment. Ross Decl. ¶ 5, Ex. D (Plan Amendment Ten, Supp. 17);

24   Compl., ¶¶ 26-28, 67. This was called the Lump Sum Window ("LSW"). *Id.* In calculating their

25   lump sum payments due under the LSW, Plaintiffs allege that AT&T Services applied an

26   improper and unreasonable "early retirement factor" that resulted in less than actuarially

27   equivalent benefits as required by ERISA. Compl., ¶¶ 67, 71. Plaintiffs contend that AT&T

28   Services should have used the presumptively reasonable interest rate and mortality table provided

1    by 26 U.S.C. § 417(e).  *Id.*, ¶ 73.

2          A simple review of the applicable Plan and Program terms demonstrates that not only did

3    the Plan compute Plaintiffs' benefits using the § 417(e) interest rate and mortality tables that

4    Plaintiffs contend are correct, but also that the Early Retirement Factors played no part in the

5    determination of their lump-sum benefits.[6]  Under these circumstances, Plaintiffs cannot satisfy

6    the Article III minimum to allege injury-in-fact because they have suffered no harm and their

7    claims must be dismissed.

8          Each Plaintiff was subject to the rules of a different Program, but a step-by-step analysis

9    of the terms that govern each Plaintiff's lump-sum payment confirms Defendants' argument:

10   • Plaintiff Eliason participates in the AT&T Legacy Bargained Program and elected to

11     participate in the LSW.  Compl. ¶ 26.  Under the Plan, "the amount of the LSW Lump

12     Sum is the Actuarial Equivalent (as defined in the Plan) of the ALB Program Pension

13     Benefit payable at age 65."  Ex. D, § 5.1.6.  For the Legacy Bargained Program, the Plan

14     defines "Actuarial Equivalent" to use the mortality table and interest rate prescribed under

15     ERISA § 417(e)(3)(C).  Ex. A, § 3.1(3); Ross Decl. ¶ 6, Ex. E (Plan Supp. 9), §§ 1.2, 2.3,

16     2.4, 3.1, 4.1.  Consistent with the Plan language, Eliason's lump-sum benefit was

17     calculated by multiplying her age-65 accrued benefit by the § 417(e) deferred lump sum

18     factor, which converts the deferred vested annuity to a present value by using the § 417(e)

19     interest rate and mortality table.  Korthas Decl. ¶ 3, Ex. 1 (Fidelity calculation worksheet

20     for Eliason's lump-sum benefit).[7]  In sum, Eliason has already received what she says the

21     Plan was required to provide under ERISA.

22   • Plaintiff Hueckel participates in the AT&T Nonbargained Program of the Plan and elected

23   ---

[6] Plaintiffs do not allege that the Joint and Survivor Annuity Factors were applied to reduce their
24   lump-sum payments, nor could they, as the Plan terms and Plaintiffs' actual lump-sum
     calculations will make clear, the Joint and Survivor Annuity Factors also played no role in
25   determining their lump-sum benefits.

26   [7] In a motion challenging subject matter jurisdiction, the court may consider evidence, such as
     affidavits and other relevant materials, that are outside of the face of the complaint.  *Wood v. City*
27   *of San Diego*, 678 F.3d 1075, 1083 n.8 (9th Cir. 2012); *Safe Air for Everyone v. Meyer*, 373 F.3d
     1035, 1039 (9th Cir. 2004); *Northern California River Watch v. Ecodyne Corp.*, 2013 WL
28   2645767, at *3 (N.D. Cal. June 12, 2013).

1   to participate in the LSW.  Compl. ¶ 27; Ross Decl., ¶ 7, Ex. F (Nonbargained Program).

2   Under the LSW, the lump-sum payment for the Nonbargained Program is calculated in

3   one of two ways.  For some participants, it is "equal to the Actuarial Equivalent" of the

4   participant's pension benefit.  Ex. D, § 5.1.2(i).  As with the Legacy Bargained Program,

5   "Actuarial Equivalent" for the Nonbargained Program is also defined under the Plan as

6   requiring use of the § 417(e) factors.  Ex. E, §§ 1.2, 2.3, 2.4, 3.1, 4.9.  For other

7   Nonbargained Program participants, the LSW lump sum "is determined in accordance

8   with the current provisions of the Nonbargained Program."  Ex. F, § 5.1.2(ii).  As of

9   January 1, 2018 the Nonbargained Program lump-sum payment is governed by

10  Amendment Six to the Plan, which would cover an election made in June 2019.  Ross

11  Decl. ¶ 8, Ex. G (Plan Amendment Six), § 13.2.6; Compl., ¶ 27 (alleging that Hueckel

12  elected to participate in the LSW in June 2019).  Amendment Six provides that the

13  "minimum lump sum" is calculated using the § 417(e) factors.  *Id.*, § 13.2.6(2).  Thus,

14  under either scenario, Hueckel would *at a minimum* receive a lump-sum payment that was

15  calculated as present value of her accrued benefit at her Normal Retirement Age using the

16  § 417(e) factors that she requests through this lawsuit.  Hueckel's lump-sum benefit was

17  initially calculated in two different ways: using an immediate lump-sum factor and the §

18  417(e) factors.  Korthas Decl. ¶ 4, Ex. 2 (Fidelity calculation worksheet for Hueckel's

19  lump sum benefit).  Because use of the § 417(e) factors resulted in the larger benefit, that

20  is the lump-sum benefit that Hueckel was eligible to receive.  *Id.*  Thus, Hueckel has not

21  suffered harm because her lump-sum benefit was determined using the very § 417(e)

22  factors she requests in this lawsuit.

23  • Finally, Plaintiff Lawrence's lump-sum payment was also calculated using the § 417(e)

24  factors, as required by the Plan.  Plaintiff Lawrence participates in the Southwest Program

25  of the Plan.  Compl. ¶ 28.  Lawrence's lump sum was "determined by the [Southwest]

26  Program[ ], in accordance with the Plan provisions in effect on the LSW Benefit

27  Commencement Date."  Ex. D, § 5.1.  The Southwest Program calculates lump-sum

28  benefit payments using the mortality table and interest rate provided in § 417(e).  Ex. E,

§§ 1.2, 2.3, 2.4, 3.1, 4.12.1.  In accordance with these Plan terms, Lawrence's lump sum was calculated by multiplying her age-65 accrued benefit by the § 417(e) deferred lump sum factor.  Korthas Decl. ¶ 5, Ex. 3 (Fidelity calculation worksheet for Lawrence's lump-sum benefit).   As a result, like Eliason and Hueckel, Lawrence has received precisely the lump-sum benefit that she alleges she was owed.

In calculating Plaintiffs' lump-sum benefits, AT&T Services was bound to apply the terms of the Plan.  As shown above, for each of Plaintiffs' Programs, the Plan terms provided that Plaintiffs would receive an early lump-sum payment that was no less than the present value of their age-65 pension benefits, computed with the § 417(e) factors.

In a class action, the named plaintiffs must be able to establish a sufficient injury-in-fact to support Article III standing.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (citation omitted).  Here, Plaintiffs allege that they have been injured by the application of "Early Retirement Factors" instead of the § 417(e) factors.  The Court need not accept Plaintiffs' allegations as true.  *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998) (a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").  The Plan terms and benefit calculations for Plaintiffs' lump-sum distributions demonstrate conclusively that they received benefits calculated with the § 417(e) factors.

To qualify as an injury-in-fact, an alleged harm must be "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560-61.  Having received exactly what they allege they were owed, Plaintiffs have come to this Court with no wrong for the Court to redress.  Accordingly, Plaintiffs' claims must be dismissed for lack of standing.

**B.      Plaintiffs Additionally Fail to State a Claim for Relief**

        **i.      Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  While a court

1    analyzing a motion to dismiss must accept as true all well-pleaded factual allegations in the

2    complaint, "a court is 'not bound to accept as true a legal conclusion couched as a factual

3    allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although a complaint need not contain

4    detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

5    relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

6    cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual

7    allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such

8    that it is "plausible on its face." *Twombly*, 550 U.S. at 570.  A complaint that "plead[s] facts that

9    are 'merely consistent with' a defendant's liability" flunks this test, as it "stops short of the line

10   between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.

11            **ii.    Grounds for Dismissal**

12            **a.    <u>Plaintiffs Fail to Allege Facts Warranting Reformation</u>**

13            Plaintiffs' claims warrant dismissal under Rule 12(b)(6) because they fail to state a claim

14   for the equitable remedy of reformation, the remedy they seek for Defendants' alleged ERISA

15   violations.  "[R]eformation is proper only in cases of fraud and mistake." *Skinner v. Northrop*

16   *Grumman Retirement Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) (citation omitted).  The

17   Complaint is free of any allegations of fraud or mistake to support reformation; indeed, the words

18   "fraud" and "mistake" appear nowhere in Plaintiffs' allegations.  *See Josef K. v. California*

19   *Physicians' Serv.*, 2019 WL 2342245, at *9 n.9 (N.D. Cal. June 3, 2019) (noting that reformation

20   is not an available remedy for a plaintiff who makes no allegations of fraud or mistake in the

21   complaint); *Miniace v. Pacific Maritime Ass'n*, 2007 WL 963160, at *14 (N.D. Cal. Mar. 30,

22   2007) (same).

23            At most, Plaintiffs allege that the Plan Administrator did not disclose that the reduction

24   factors would not result in actuarially equivalent alternative forms of benefits, which saved the

25   Plan Sponsor money.  Compl., ¶¶ 68-69.  But these are not allegations of mistake or fraud.

26   Instead, they go to the heart of the legal dispute over whether the mortality tables and interest

27   rates used to calculate various early pension benefits were appropriate.  Plaintiffs' allegations do

28   not support the equitable remedy of reformation.  Without a viable remedy, their claims must be

1    dismissed.

2                    **b.**     <u>**Plaintiffs Failed to Exhaust Their Administrative Remedies**</u>

3           In their failed attempt to obtain reformation of the Plan's terms, Plaintiffs' ultimate goal

4    was to obtain compensation of the difference between the lump-sum benefits they received and

5    the lump-sum benefits they claim they should have received when the proper § 417(e) factors

6    were applied.  Setting aside the fact that Plaintiffs have no standing to pursue these claims

7    because they *did* receive lump-sum benefits based on the § 417(e) factors they pursue, Plaintiffs

8    have pleaded the wrong ERISA claim.

9           Section 502(a)(1)(B) provides that "[a] civil action may be brought by a participant . . . to

10   recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

11   the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §

12   1132(a)(1)(B).  Because Plaintiffs' true objective was to challenge the Plan Administrator's

13   application of the Plan term "actuarial equivalent" and its computation of their benefits, they

14   should have pursued a claim for benefits due, under § 502(a)(1)(B).  But such a claim cannot be

15   brought in federal court until the plaintiffs have exhausted administrative remedies provided by

16   the plan.  *Diaz v. United Agr. Employee Welfare Ben. Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir.

17   1995) (The "general rule governing ERISA claims [is] that a claimant must avail himself or

18   herself of a plan's own internal review procedures before bringing suit in federal court.").  The

19   Plan at issue requires participants to lodge "any grievance, complaint or claim concerning any

20   aspect of the operation or administration of the Plan or Pension Fund, including, but not limited

21   to, claims for benefits" with the Plan Administrator in the first instance.  Ex. A, §§ 22.1, 22.2.

22   Plaintiffs did not do so here.  Having failed to utilize the internal review procedures that the Plan

23   terms provide, Plaintiffs are barred from pursing their claims in federal court.

24          This case highlights clearly why the exhaustion of administrative benefits is a prerequisite

25   to a benefits lawsuit.  Too often, disputes about the computation of benefits stem from a

26   misunderstanding rather than a bona fide dispute requiring judicial intervention.  This is just such

27   a case; had Plaintiffs petitioned the Plan Administrator to recompute their benefits, they would

28   have learned that their benefits were already computed using the desired statutory interest rate

1   and mortality table.

2               **c.**       **Plaintiffs Fail to State a Claim Against AT&T Inc.**

3       Whether Plaintiffs' claims are analyzed as claims for equitable relief under § 502(a)(3) or

4   claims for benefits under § 502(a)(1)(B), AT&T Inc. is not a proper Defendant and must be

5   dismissed.  The reasons for dismissing AT&T Inc. are two-fold.

6       First, as noted above, Plaintiffs' allegations focus on the Plan Administrator's (AT&T

7   Services) calculation of their lump-sum payment based on the allegedly deficient Early

8   Retirement Factors and Joint & Survivor Annuity Factors.  *See* Compl. ¶¶ 60, 65, 70, 81.

9   Plaintiffs specifically allege that "[t]he Early Retirement and Joint and Survivor Annuity Factors

10   that AT&T Services used to determine benefits left participants worse off than if they took a

11   single life annuity at normal retirement age."  Compl., ¶ 81.  Plaintiffs also allege that it was

12   AT&T Services, as Plan Administrator, who "impermissibly pa[id] Plan participants less than the

13   actuarial equivalent of their ERISA-protected retirement benefits" and "caused . . . Plan

14   participants to forfeit their ERISA-protected benefits."  *Id.*, ¶¶ 100, 109.   Although inaccurate, it

15   is this purported application of the reduction factors – *i.e.*, AT&T Services' allegedly improper

16   interpretation of the Plan term "actuarial equivalent" – that is at the heart of Plaintiffs' claims.

17   Plaintiffs cannot obtain relief for purported issues concerning Plan administration against the Plan

18   Sponsor.  *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d

19   1282, 1297 (9th Cir. 2014) (claims concerning the discretionary management of a plan, such as a

20   claim for benefits, must be brought against the plan administrator or similar plan fiduciary); *see*

21   *also* Ex. A, §§ 17.1 ("The Plan Administrator is responsible for the general administration of the

22   Plan."), 17.2 ("The Plan Administrator will have all powers necessary or appropriate to

23   accomplish its respective duties and obligations including, without limitation, complete and

24   absolute discretion to interpret the Plan and all matters of fact with respect to such duties and

25   obligations.").  There are no allegations that AT&T Inc. played any role in the application of the

26   Plan's terms to Plaintiffs' requests for lump-sum payments.

27       Second, whether a § 502(a)(3) claim is properly asserted against a defendant must be

28   determined based on the alleged misconduct and the availability of "appropriate equitable relief."

1  *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000); *see also CGI*

2  *Techs. & Solutions, Inc. v. Rose*, 2010 WL 11684296, at *2 (W.D. Wash. Oct. 21, 2010).

3  Plaintiffs' only allegation against AT&T Inc. is that, as Plan Sponsor, it maintained a Plan with

4  terms that violate ERISA.  *See* Compl., ¶¶ 101, 110.  Defendants have already shown that the

5  equitable remedy of reformation is not available to Plaintiffs because they have not made

6  allegations of mistake and fraud, and no set of facts upon which Plaintiffs could make such

7  allegations are apparent.  Accordingly, Plaintiffs' allegations fail to state a claim against AT&T

8  Inc. and must be dismissed at least as to that Defendant.

9        **C.**     **The Case Should be Transferred to Texas Federal Court**

10            **i.**     **Legal Standard**

11        Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district

12  where it could have been brought "[f]or the convenience of the parties and witnesses, in the

13  interest of justice."  28 U.S.C. § 1404(a); *see also Earth Island Institute v. Quinn*, 56 F. Supp. 3d

14  1110, 1117 (N.D. Cal. 2014) ("[A] district court has broad discretion to adjudicate motions to

15  transfer on a case-by-case basis.") (citation omitted).  Transfer is appropriate so long as

16  "consideration[s] of convenience and fairness" favor transfer.  *Stewart Org., Inc., v. Ricoh Corp.*,

17  487 U.S. 22, 29 (1988).  The decision to transfer lies within the sound discretion of the trial judge.

18  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

19            **ii.**     **Plaintiffs' Lawsuit Should be Transferred to the Northern District of**

20                 **Texas**

21                 **a.**     **Section 1404(a) Affords this Court Wide Discretion to Transfer**

22                       **Cases**

23        In the event that the Court determines that the case should not be dismissed for the reasons

24  stated above, Defendants move in the alternative to transfer venue to the United States District

25  Court for the Northern District of Texas.  All of the events that are relevant to Plaintiffs' claims –

26  the Plan Administrator's application of the Plan's terms to allegedly reduce Plaintiffs' benefits –

27  took place within the Northern District of Texas where Defendants each reside.  *See* Brockman

28  Decl., ¶¶ 3, 6.  Plaintiffs' only foothold in the Northern District of California is Hueckel's

residence here, which is insufficient to override the interests of justice that will be served and the convenience to the parties and witnesses that will be gained by transferring this case to the Northern District of Texas.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Its purpose is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616 (internal quotation omitted).  Transfer is appropriate where the case could have been brought in the Northern District of Texas and transfer serves the "convenience of the parties and witnesses" and is in the "interest of justice."  28 U.S.C. § 1404(a).  To evaluate these final two considerations, courts make an "individualized, case-by-case" determination based on several relevant factors. *Earth Island Institute*, 56 F. Supp. 3d at 1117 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).  The court may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211 F.3d at 498-99.  On balance, these factors militate in favor of a transfer.

### b.    This Case Could Have Been Brought in the Northern District of Texas

The only limitation on the Court's discretion to transfer a case under § 1404(a) is the requirement that the new forum be a "district or division where [the case] might have been brought."  28 U.S.C. § 1404(a).  It is beyond dispute that this case could have been brought in the Northern District of Texas.  Under ERISA's venue provision, an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides

- 14 -

1   or may be found."  29 U.S.C. § 1132(e)(2).  AT&T Services resides in Dallas, Texas within the

2   Northern District of Texas, and AT&T Inc. is a holding company that conducts business only in

3   the Northern District of Texas.  Brockman Decl., ¶¶ 3, 6.  The Plan is maintained in Dallas,

4   Texas.  *Id.*, ¶¶ 7-8.  As Plan Administrator, AT&T Services directed the application of the terms

5   of the Plan to determine Plaintiffs' lump-sum payments in Dallas.  *Id.*, ¶¶ 8-10.  Therefore, the

6   Northern District of Texas is where all Defendants reside, where the Plan is administered, and

7   where the events giving rise to Plaintiffs' claims occurred.  Moreover, one of the three named

8   Plaintiffs resides in the Northern District of Texas.

9                      c.    **Plaintiffs' Claims Lack Any Meaningful Connection to This**

10                            **Forum**

11         This forum lacks any material connection to Plaintiffs' claims that AT&T Services

12   improperly calculated their early lump-sum payments in violation of ERISA.  Plaintiffs'

13   connections to the Northern District of California begin and end with their allegations that

14   Hueckel resides and was employed by an AT&T subsidiary in this District.  But in a class action,

15   Plaintiffs' contacts with the forum "are of minimal value."  *Italian Colors Rest. v. Am. Express*

16   *Co.*, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003).

17         As noted above, all of the decisions that are relevant to resolving Plaintiffs' claims took

18   place in the Northern District of Texas.  AT&T Inc. is incorporated in Delaware and

19   headquartered in Dallas, Texas.  Brockman Decl., ¶ 3.  AT&T Inc. is a holding company that

20   conducts no business directly with the public, including in California.  *Id.*, ¶ 4.  AT&T Inc. has

21   officers and a board of directors, but it has no employees in California or elsewhere.  *Id.*  AT&T

22   Inc.'s involvement in its subsidiaries is limited to stock ownership.  *Id.*, ¶ 5.  The Plan operates

23   entirely through the Plan Administrator, AT&T Services, which is headquartered in Texas.  *Id.* ¶

24   9; Ex. A, § 22.9 ("The situs of the Plan hereby created is the State of Texas.").

25         The relevant Plan documents, cited throughout this motion, are all designed and modified

26   at company headquarters in Dallas, Texas.  Brockman Decl., ¶¶ 7-8.  Plan administration

27   decisions are also made in Dallas.  *Id.* ¶ 8.  There are no relevant contacts in the Northern District

28   of California relating to Plaintiffs' causes of action, aside from Plaintiff Hueckel's participation in

1   the Plan.  Assuming for present purposes that she has standing, Hueckel at most felt the effects of

2   those Plan-related decisions in this forum, but those effects do not speak directly to whether the

3   Northern District of California is the appropriate forum.  Plaintiffs allege that Plan participation is

4   a common characteristic across the proposed class (Compl. ¶ 83) and, therefore, Plaintiff

5   Hueckel's individual decision to participate in this forum is irrelevant to adjudication of her

6   claims.

7                    d.      **The Remaining Factors Compel Transfer**

8             Application of the remaining discretionary factors set out in *Jones* confirms that transfer is

9   warranted.  Normally, the plaintiffs' choice of forum is an important factor in this analysis, but it

10  is of lesser significance where the relevant conduct did not take place in the chosen forum.  *Park*

11  *v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1094 (N.D. Cal. 2013) (citing *Lou v.*

12  *Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the

13  forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled

14  to only minimal consideration.").  Here, the local interest is, at most, limited to Hueckel's alleged

15  harm and is unconcerned with the harm of the remaining named Plaintiffs or putative class

16  members.  Therefore, Plaintiffs' decision to file suit in the Northern District of California is

17  entitled to reduced deference.  *Fabus Corp. v. Asiana Exp. Corp.*, 2001 WL 253185, at *1 (N.D.

18  Cal. Mar. 5, 2001) ("the degree to which courts defer to the plaintiff's chosen forum is

19  substantially reduced where the plaintiff's forum choice is not its residence or where the forum

20  chosen lacks a significant connection to the activities alleged in the complaint").  Moreover,

21  Plaintiffs sue on behalf of a putative class, which renders Plaintiffs' choice of forum even less

22  significant.  *Belzberg*, 934 F.2d at 739 ("[W]hen an individual . . . represents a class, the named

23  plaintiff's choice of forum is given less weight.").  Plaintiffs have already alleged that they have

24  an adequate class representative in the Northern District of Texas – Plaintiff Lawrence, who lives

25  in Arlington, Texas, just a few miles outside of Dallas.  *See* Compl., ¶ 28.

26            The transferee court's familiarity with the law governing Plaintiffs' claims does not

27

28

1    disfavor transfer because both courts are equally familiar with the federal law of ERISA.[8]  *Italian*

2    *Colors*, 2003 WL 22682482, at \*3.  And while both courts would be applying the same law, the

3    Northern District of Texas has a stronger interest in the litigation because it is concerned with the

4    long-term, ongoing administration of the Plan within its district and how that administration

5    affects Plan participants, as opposed to the Northern District of California's limited interest in

6    only the claims of Hueckel and other resident putative class members.  *See Vu v. Ortho-McNeil*

7    *Pharmaceutical, Inc.*, 602 F.Supp.2d 1151, 1157 (N.D. Cal. 2009) (the forum with the greater

8    interest in the litigation is the forum where the events at issue took place).

9         When it comes to the comparable cost of litigating this case, the parties' expenses will be

10   materially lower in the Northern District of Texas than if the case were to remain in this forum

11   given the closer proximity to the evidence.  A court sitting in the Northern District of Texas

12   would have easier access to the sources of proof that will be relevant in this case.  Substantially

13   all of the evidence that will be probative of Plaintiffs' claims is located in Dallas.  Brockman

14   Decl., ¶¶ 8-10.  For example, the Plan Administrator and Plan-related documents reside in Dallas,

15   Texas.  Transferring this case to a courthouse within miles of AT&T's headquarters will

16   undoubtedly be more convenient for the Plan's witnesses and will allow the parties to more

17   efficiently take testimony of those witnesses.  *See Deputy v. Long-Term Disability Plan of*

18   *Sponsor Aventis Pharmaceuticals*, 2002 WL 31655328, at \*3 (N.D. Cal. Nov. 21, 2002) (travel

19   for potential witnesses is a relevant consideration on a motion to transfer).  As a result, litigating

20   in Defendants' home district would be significantly more convenient and cost effective for both

21   parties.  *See Italian Colors*, 2003 WL 22682482, at \*5 ("the cost of litigation will be substantially

22   lessened if the action is venued" in the same district as the defendants' principal place of business

23   and "litigation costs are reduced when venue is located near most of the witnesses expected to

24

---

25   [8] To the extent that state law becomes relevant (*e.g.*, if there are contract interpretation or statute
     of limitations issues related to a § 502(a)(3) claim), the Plan contains a choice of law provision
26   requiring that "[a]ll provisions of the Plan will be construed in accordance with the laws of the
     State of Texas (excluding any conflict of law principals that refer to the laws of another
27   jurisdiction) except to the extent preempted by federal law." Ex. A, § 22.9.  The application of
     another state's law favors transfer to that venue.  *See Ming Hsu v. VTEX Energy, Inc.*, 2007 WL
28   1232056, at \*3 (N.D. Cal. Apr. 26, 2007).

1  testify or give depositions").  Plaintiffs, on the other hand, can be represented conveniently in the

2  Northern District of Texas by Lawrence, who resides there, as well as by Plaintiffs' lead counsel

3  who practices out of Washington, D.C.

4      On balance, justice will be served by transferring this case to the district where all

5  Defendants reside and the conduct alleging giving rise to Plaintiffs' claims arose.  Transfer to the

6  Northern District of Texas will be substantially more convenient for all parties to access the

7  relevant evidence in this case without hampering Plaintiffs' prosecution of their claims in any

8  way.

9  **III.    CONCLUSION**

10      For all of the reasons set forth above, Defendants move the Court to dismiss Plaintiffs'

11  claims pursuit to Federal Rules of Civil Procedure 12(b)(1) and (b)(6).  In the alternative,

12  Defendants ask the Court to transfer the case to the Northern District of Texas pursuant to 28

13  U.S.C. § 1404(a).

14

15  Dated:  December 2, 2019                         Respectfully Submitted,

16

17                                                   By: s/ Nancy G. Ross

18                                                       Nancy G. Ross
                                                         Brian D. Netter

19                                                       Abigail M. Bartine

20                                                       Attorneys for Defendants

21

22

23

24

25

26

27

28