Nancy G. Ross (pro hac vice)
nross@mayerbrown.com
Brian D. Netter (pro hac vice)
bnetter@mayerbrown.com
Abigail M. Bartine (SBN 326993)
abartine@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois  60606-4637
Telephone: (312) 782-0600
Facsimile:  (312) 701-7711

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amy Eliason, Angela Hueckel, Lindie Lawrence, Timothy Scott, Patricia Gilchrist, Gerald Klein, and Karen Fisher, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AT&T Inc., AT&T Services, Inc., and the AT&T Pension Benefit Plan,<br><br>Defendants. | Case No. 4:19-cv-6232-SK<br><br>**DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE**<br><br>Date:       April 6, 2020<br>Time:      9:30 a.m.<br>Judge:     Hon. Sallie Kim<br>Action Filed: 10/1/19 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.   PROCEDURAL HISTORY ........................................................................................... 3

II.  BACKGROUND ............................................................................................................ 3

    A.   Legal Framework ................................................................................................. 4

    B.   The AT&T Pension Plan ...................................................................................... 5

III. ARGUMENT ................................................................................................................. 6

    A.   The Original Plaintiffs Lack Standing and the Amended Complaint's
        Addition of New Plaintiffs Cannot Cure this Barrier to Suit ................................ 6

        i.    Legal Standard ......................................................................................... 6

        ii.   The Original Plaintiffs Have Not Suffered an Injury ............................... 7

        iii.  The Four New Named Plaintiffs Cannot Fix this Jurisdictional
             Deficiency ................................................................................................ 11

    B.   Plaintiffs Additionally Fail to State a Claim for Relief ....................................... 12

        i.    Legal Standard ......................................................................................... 12

        ii.   Grounds for Dismissal ............................................................................ 13

             a.    Plaintiffs Fail to Allege Facts Warranting Reformation ............... 13

             b.    Plaintiffs Inadequately Plead Claims for Breach of Fiduciary
                  Duty against AT&T Services ........................................................ 14

             c.    Plaintiffs Fail to State a Claim Against AT&T Inc ...................... 16

    C.   If Not Dismissed, This Case Should be Transferred to Texas Federal Court ....... 17

        i.    Legal Standard ......................................................................................... 17

        ii.   Section 1404(a) Affords this Court Wide Discretion to Transfer
             Cases ........................................................................................................ 18

        iii.  This Case Could Have Been Brought in the Northern District of
             Texas ....................................................................................................... 19

        iv.   Plaintiffs' Claims Lack Any Meaningful Connection to This Forum ....... 19

        v.    The Remaining Factors Compel Transfer ................................................ 20

IV.  CONCLUSION .............................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allbaugh v. California Field Ironworkers Pension Tr.*,
    2016 WL 6138244 (D. Nev. Oct. 19, 2016)................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................12, 13, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................12, 13, 16, 17

*Bird v. First Alert, Inc.*,
    2015 WL 3750225 (N.D. Cal. June 15, 2015) .......................................................11

*In re Calpine Corp.*,
    2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) .......................................................15

*CGI Techs. & Solutions, Inc. v. Rose*,
    2010 WL 11684296 (W.D. Wash. Oct. 21, 2010) ..................................................16

*Clapper v. Amnesty Int'l, USA*,
    568 U.S. 398 (2013)............................................................................................7

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995)..............................................................................13

*Cross v. Bragg*,
    329 Fed. App'x 443 (4th Cir. 2009)....................................................................13

*DaVita, Inc. v. Amy's Kitchen, Inc.*,
    379 F.Supp.3d 960 (N.D. Cal. 2019) ....................................................................6

*Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharmaceuticals*,
    2002 WL 31655328 (N.D. Cal. Nov. 21, 2002).....................................................22

*Earth Island Institute v. Quinn*,
    56 F. Supp. 3d 1110 (N.D. Cal. 2014) .............................................................17, 18

*Fabus Corp. v. Asiana Exp. Corp.*,
    2001 WL 253185 (N.D. Cal. Mar. 5, 2001).........................................................21

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000).........................................................................................16

*Italian Colors Rest. v. Am. Express Co.*,
    2003 WL 22682482 (N.D. Cal. Nov. 10, 2003).........................................19, 21, 22

- ii -

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000)............................................................................19, 21

*Koster v. Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947)....................................................................................................20

*Lebahn v. Nat'l Farmers Union Uniform Pension Plan*,
   828 F.3d 1180 (10th Cir. 2016)................................................................................14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003)..................................................................7, 10, 11

*Livick v. Gillette Co.*,
   524 F.3d 24 (1st Cir. 2008) ......................................................................................14

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987).....................................................................................21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................7, 11

*Ming Hsu v. VTEX Energy, Inc.*,
   2007 WL 1232056 (N.D. Cal. Apr. 26, 2007) .........................................................21

*Morales v. Intelsat Global Serv. LLC*,
   554 Fed. App'x 4 (D.C. Cir. 2014) .........................................................................13

*Northern California River Watch v. Ecodyne Corp.*,
   2013 WL 2645767 (N.D. Cal. June 12, 2013) ...........................................................9

*Park v. Dole Fresh Vegetables, Inc.*,
   964 F.Supp.2d 1088 (N.D. Cal. 2013) ...................................................................21

*Pearce v. Chrysler Grp. LLC Pension Plan*,
   893 F.3d 339 (6th Cir. 2018).....................................................................................13

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004).....................................................................................9

*Skinner v. Northrop Grumman Retirement Plan B*,
   673 F.3d 1162 (9th Cir. 2012)..................................................................................13

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
   770 F.3d 1282 (9th Cir. 2014)..................................................................................17

*Spokeo, Inc. v. Robbins*,
   136 S. Ct. 1540 (2016)..................................................................................................7

*Stanford v. Home Depot USA, Inc.*,
   358 Fed. App'x 816 (9th Cir. 2009).........................................................................7

*Stanley v. George Washington Univ.*,
    394 F.Supp.3d 97 (D.D.C. 2019) ..................................................................12

*Steckman v. Hart Brewing Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .....................................................................11

*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83 (1998) ........................................................................................7

*Stewart Org., Inc., v. Ricoh Corp.*,
    487 U.S. 22 (1988) ......................................................................................18

*In re SunTrust Banks, Inc. ERISA Litig.*,
    2016 WL 4377131 (N.D. Ga. Aug. 17, 2016) ..............................................12

*Thome v. U.S. Food & Drug Admin.*,
    2011 WL 3206910 (N.D. Cal. July 27, 2011) ..............................................12

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .........................................................................3

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ....................................................................................18

*Ventress v. Japan Airlines*,
    486 F.3d 1111 (9th Cir. 2007) .....................................................................18

*Vu v. Ortho-McNeil Pharmaceutical, Inc.*,
    602 F.Supp.2d 1151 (N.D. Cal. 2009) .........................................................22

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) .......................................................................9

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ...............................................................14, 15

**Statutes**

26 U.S.C. § 417(e) ..............................................................................8, 9, 10, 11

26 U.S.C. §§ 417(e), 430(h) ......................................................................................4

28 U.S.C. § 1404(a) ...............................................................................17, 18, 19, 23

29 U.S.C. § 1001. .............................................................................................3

29 U.S.C. § 1002(21)(A) ............................................................................14

29 U.S.C. § 1054(c)(2)(B) ...................................................................................5

29 U.S.C. § 1054(c)(3) ......................................................................5, 6, 16

- iv -

29 U.S.C. § 1055(a) ............................................................................................5

29 U.S.C. § 1055(d) ............................................................................................5

29 U.S.C. § 1055(g)(3) ........................................................................................4

29 U.S.C. § 1083(h) ............................................................................................4

29 U.S.C. § 1113(1) ...........................................................................................12

29 U.S.C. § 1132(a)(2) .......................................................................................15

29 U.S.C. § 1132(a)(3) ...........................................................................12, 15, 16

29 U.S.C. § 1132(e)(2) .......................................................................................19

ERISA § 205 ......................................................................................................17

ERISA § 206 ......................................................................................................17

ERISA § 409(a) ..................................................................................................15

ERISA § 417(e)(3)(C) ..........................................................................................9

ERISA § 502(a)(2) .................................................................................14, 15, 16

ERISA § 502(a)(3) .................................................................................15, 16, 17

**Other Authorities**

29 C.F.R. § 2509-75-8(D)(2) .............................................................................14

Fed. R. Civ. P. 9(b) ............................................................................................13

Fed. R. Civ. P. 12(b)(1) ...............................................................................7, 23

Fed. R. Civ. P. 12(b)(6) ...................................................................12, 13, 23

Fed. R. Civ. P. 12(h)(3) ......................................................................................6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Monday April 6, 2020, at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Sallie Kim in the United States District Court for the Northern District of California, Courtroom C, located on the 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendants AT&T Inc., AT&T Services, Inc. ("AT&T Services"), and the AT&T Pension Benefit Plan (together, "Defendants") will and hereby do move the Court to dismiss the amended complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to transfer the action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). The motion is supported by the accompanying Memorandum of Points and Authorities and the declarations of John D. Brockman, Aaron Korthas, Mary P. McDonald, Nancy G. Ross, and Abigail M. Bartine and by such other written and oral argument as may be presented to the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

On October 1, 2019, Plaintiffs Amy Eliason, Angela Hueckel, and Lindie Lawrence (the "Original Plaintiffs") filed this putative class action lawsuit. Their theory was that AT&T Services, and AT&T Inc. had violated the Employee Retirement Income Security Act ("ERISA") by using an allegedly erroneous set of "Early Retirement Factors" and "Joint and Survivor Annuity Factors" to compute the benefits for participants in the AT&T Pension Benefit Plan (the "Plan").

But there was a problem with the Original Plaintiffs. As alleged on the face of the original complaint, each of the Original Plaintiffs had elected to receive a lump-sum benefit. None of their lump-sum benefits resulted from the application of Early Retirement Factors or Joint and Survivor Annuity Factors. To the contrary, the Original Plaintiffs' lump sums were calculated in precisely the manner that they alleged was required by ERISA. As such, Defendants moved to dismiss the complaint for lack of standing.

Confronted with Defendants' arguments and the evidence showing that the Original Plaintiffs suffered no harm, they elected to file an amended complaint rather than oppose the

motion to dismiss. But Plaintiffs' amended complaint makes no new allegations to address the Original Plaintiffs' lack of standing. Their strategy, it appears, is to join new Plaintiffs to belatedly manufacture standing. Plaintiffs' strategy is fatally flawed: the law is clear that standing is evaluated at the time the lawsuit is filed, such that later-joined Plaintiffs cannot create jurisdiction if the Original Plaintiffs had none. Plaintiffs' amended complaint is procedurally improper and must be dismissed.

As with the original complaint, the amended complaint is also defective on its face for other reasons. For one, Plaintiffs ask this Court to reform the Plan to replace the disputed factors, but the equitable remedy of reformation is allowed under ERISA only if there has been mistake or fraud, neither of which has been plausibly alleged here. In addition, Plaintiffs' claims against the Plan Sponsor AT&T Inc. fail because their amended complaint challenges the Plan Administrator's calculation of their benefit, a process over which the Plan Sponsor has no involvement or control. Finally, the fiduciary breach claims that Plaintiffs assert against Plan Administrator AT&T Services, Inc. are based on threadbare legal conclusions or conduct that does not constitute a fiduciary act.

Even if Plaintiffs were able to plead a legitimate claim, they filed suit in the wrong forum. The events allegedly giving rise to Plaintiffs' claims have no connection to the Northern District of California. Instead, all aspects of Plan design and administration take place in Dallas, Texas, where each Defendant and the Plan-related evidence reside. In fact, the Plan terms require application of Texas law to the extent not preempted by federal law. This lawsuit's only connection to the Northern District of California is that a few named Plaintiffs reside in this district (two of whom were added only after Defendants' original motion to transfer venue), which is an insufficient reason to keep the case in an otherwise inconvenient forum when a nationwide class is alleged. Transfer to the Northern District of Texas would allow a court in that state to decide matters of Plan administration by an employer in its jurisdiction, and make access to witnesses and other evidence substantially more convenient for all concerned. Transfer would not impact Plaintiffs' litigation of their claims, particularly as one named Plaintiff resides in the Dallas area, and one of two counsel representing Plaintiffs lives outside this jurisdiction.

1    **I.    PROCEDURAL HISTORY**

2         On October 1, 2019, the Original Plaintiffs filed a complaint against Defendants asserting

3    claims arising under ERISA, 29 U.S.C. §§ 1001 *et seq.*  Dkt. No. 1.  Defendants filed a motion to

4    dismiss the complaint or to transfer venue to the U.S. District Court for the Northern District of

5    Texas on December 2, 2019.  Dkt. No. 30.

6         Instead of opposing the motion to dismiss, the Original Plaintiffs filed an amended

7    complaint on December 23, 2019.  Dkt. No. 34.  In addition to two new claims (Counts Three and

8    Four) and various amendments to the background allegations, the amended complaint named four

9    new Plaintiffs: Timothy Scott, Patricia Gilchrist, Gerald Klein, and Karen Fisher.  *Id.* ¶¶ 31-34.

10   Pursuant to the parties' stipulation, Defendants withdrew their motion to transfer venue without

11   prejudice to their ability to re-file the motion at the time they responded to the amended

12   complaint.  Dkt. Nos. 36-37.

13   **II.    BACKGROUND[1]**

14        Originally established in 1984, the Plan is a defined benefit plan sponsored by AT&T Inc.

15   Am. Compl. ¶¶ 36, 38; Ross Decl. ¶ 2, Ex. A[2] (AT&T Pension Benefit Plan Document), §§ 2.1,

16   3.1(88).  AT&T Services is the Plan Administrator.  Am. Compl. ¶ 39; Ex. A, §§ 3.1(87), 17.1.

17   The Plan Administrator is responsible for "the general administration of the Plan" and is

18   conferred "complete and absolute discretion to interpret the Plan and all matters of fact with

19   respect to such duties and obligations."  Ex. A, §§ 17.1, 17.2.  As the Plan Sponsor, AT&T Inc.

20   established the Plan but is not responsible for its administration or interpretation.  Ex. A., § 19.1.

21        Plaintiffs are former employees of AT&T subsidiaries and are participants in the Plan.

22   _____

23   [1] This background information is based on the allegations in the amended complaint, which are
     presumed true solely for purposes of this motion, and documents incorporated by reference in the

24   Complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document
     is not attached to the complaint, it may be incorporated by reference into a complaint if the

25   plaintiff refers extensively to the document or the document forms the basis of the plaintiff's
     claims.").

26

27   [2] The Plan and its Programs, discussed further below, are incorporated by reference throughout
     the amended complaint.  *See, e.g.*, Am. Compl. ¶¶ 3, 11, 15, 38, 62-86, 93-100.  These documents

28   are also central to and "form[] the basis of" Plaintiffs' claims and are therefore properly
     considered on a motion to dismiss.  *Ritchie*, 342 F.3d at 908.

1   Am. Compl. ¶¶ 28-34.  Each was eligible to begin receiving a monthly pension annuity

2   commencing at age 65.  *Id.* ¶¶ 3, 28-34.  The Plan was amended to permit lump sum distributions

3   during a limited window period, and the Original Plaintiffs decided to take advantage of that

4   opportunity and elected to receive their benefits early as a lump sum.  *Id.* ¶¶ 28-30.  Plaintiffs

5   Scott and Gilchrist commenced early pension benefits in the form of joint and survivor annuities

6   at age 58 and 55, respectively.  *Id.* ¶¶ 31-32.  Plaintiff Klein retired at age 66 and receives a joint

7   and survivor annuity.  *Id.* ¶ 33.  Plaintiff Fisher is not yet age 65 and has not begun receiving her

8   pension benefit.  *Id.* ¶ 34.

9        **A.**    **Legal Framework**

10        ERISA supplies a uniform, national regulatory framework for employer-sponsored

11   retirement plans.  Such plans come in two principal types: defined benefit and defined

12   contribution.  In a defined benefit plan, sometimes called a "pension plan," participants earn the

13   right to receive a specified periodic benefit starting at the age of retirement.  In a defined

14   contribution plan, such as a 401(k) plan, the amount of a participant's benefit at retirement is

15   determined by the participant's investment elections as well as market conditions.

16        Although they are not as elastic as defined contribution plans, pension plans are not

17   entirely inflexible.  Such plans may authorize plan participants to convert their vested benefit—a

18   stream of future payments, referred to as an annuity—into a different form of benefit:

19        <u>Lump sums</u>.  A plan may permit participants to trade their annuity for a single, cash

20   payment.  When a plan provides for a lump sum payout, ERISA prescribes a particular method

21   for valuing the lump sum: the plan may distribute the "present value" of the annuity.  In general, a

22   future payment (or stream of payments) is converted to its present value by discounting future

23   payments at a specified interest rate, to account for the time-value of money.  In the case of an

24   annuity, the payments continue until an uncertain future date—the date on which the participant

25   (or the participant and her spouse) dies—so future payments must also be discounted by the

26   actuarial probability as to when the annuitant(s) will die.  In the case of lump sums, ERISA

27   specifies the interest rate to be used for discounting purposes and the mortality table to be used

28   for projecting annuitant lifespans.  29 U.S.C. § 1055(g)(3), 1083(h); 26 U.S.C. §§ 417(e), 430(h).

1        <u>Optional forms of benefit</u>.  ERISA-governed pension plans may (and, in some

2    circumstances, must) offer optional forms of benefit.  Optional forms of benefit modulate the

3    amount that will be paid based on the form elected and how long the benefit will be paid.

4        For example, although ERISA sets the default pension benefit as a single life annuity (29

5    U.S.C. § 1054(c)(3)), plans must provide joint-and-survivor annuities to vested participants who

6    are married.  29 U.S.C. § 1055(a).  In a joint-and-survivor annuity, if the participant's spouse

7    outlives the participant, the spouse continues to receive a benefit for his life.  The monthly benefit

8    for a joint-and-survivor annuity will be less than the monthly benefit for a single-life annuity,

9    because there are more expected payments in the case of the former.[3]

10       In addition, although pension benefits are commonly paid out to participants beginning at

11   age 65 (29 U.S.C. § 1054(c)(2)(B)), a pension plan may allow participants to begin receiving their

12   benefits early.  A participant who elects to begin receiving pension benefits early will typically

13   receive a smaller monthly benefit, because the payments begin earlier and are expected to last

14   longer.  In the case of these optional forms of benefit, ERISA provides that the amount of the

15   benefit "shall be the actuarial equivalent" of the normal form of benefit.  29 U.S.C. § 1054(c)(3).

16   But the statute does not specify which assumptions should be applied in the actuarial conversion.

17       **B.      The AT&T Pension Plan**

18       The Plan provides eligible AT&T employees with certain retirement, disability, death, and

19   other benefits.  Ex. A, § 1.1.  The Plan's benefits are provided under various "Component Pension

20   Programs" ("Programs").  *Id.* § 1.4; Am. Compl. ¶¶ 11 n.2, 65.  Each Program establishes the

21   particular rules governing the benefits that are offered under the Plan for a defined population of

22   eligible employees, although they are expressly incorporated into the Plan and are subject to the

23   Plan's general terms and conditions.  *Id.*[4]

---

24   [3] The spouse's benefit will not necessarily be 100% of the original benefit; it might be only 50%.

25   29 U.S.C. § 1055(d).  Some plans offer a range of joint-and-survivor permutations.

26   [4] This motion will cite relevant provisions from the Programs in which most of the Plaintiffs
     participate: Legacy Bargained Program (Amy Eliason), Nonbargained Program (Angela Hueckel,
27   Gerald Klein, and Patricia Gilchrist), and Southwest Program (Lindie Lawrence).  Am. Compl.,
28   ¶¶ 28-30, 32-34.

Relevant to this case, each Program offers eligible employees a "Program Pension Benefit," which is a company-paid retirement benefit that they receive at a specified retirement age. Ex. A., § 3.1(97); s*ee also*, *e.g.*, Ross Decl. ¶ 3, Ex. B (Southwest Program), § 7.1.  Under most circumstances, these monthly payments begin at age 65, which is referred to throughout the Plan and Programs as the "Normal Retirement Age."  *See*, *e.g.*, Ex. A., § 3.1(73); Ex. B, § 3.1(21); Am. Compl. ¶ 74.  The applicable Program explains the form of the benefit that the participant receives.

Instead of receiving a Program Pension Benefit at the Normal Retirement Age, under certain circumstances a participant may elect to receive her pension benefit early.  Ex. A., § 3.1(29) (defining "Early Retirement Pension" as "a Normal Retirement Pension reduced as provided in the applicable Component Pension Program for commencement prior to Normal Retirement Age").  Early Retirement Pensions are "reduced to reflect such Program Participant's younger age and earlier commencement of payments" in order to ensure that the participant receives the present value of the same total amount of the Normal Pension Benefit but over a longer period of time.  Ross Decl. ¶ 4, Ex. C (Legacy Bargained Program), § 7.3.1.[5]

## III.   ARGUMENT

### A.   The Original Plaintiffs Lack Standing and the Amended Complaint's Addition of New Plaintiffs Cannot Cure this Barrier to Suit

#### i.   Legal Standard

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Standing is "a jurisdictional prerequisite to a federal court's consideration of any claim."  *DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F.Supp.3d 960, 967  (N.D. Cal. 2019).  To confer subject matter jurisdiction on a federal court, a plaintiff

---

[5] The Early Retirement Pension is generally calculated by taking the participant's Normal Retirement Pension and reducing it by an "early retirement factor."  These early retirement factors are set forth in each Program and are used to ensure that a Plan participant's receipt of an Early Pension Benefit is "actuarially equivalent" to the benefit the Plan participant would otherwise receive at her Normal Retirement Age, as required by ERISA.  *See* 29 U.S.C. § 1054(c)(3) ("in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit").

must allege and establish that she (1) has suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561. When a plaintiff lacks standing to assert her claims, the case must be dismissed for want of jurisdiction. Fed. R. Civ. P. 12(b)(1).

This case turns on the "[f]irst and foremost" of standing's elements: injury in fact. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). This requirement demands a showing that the plaintiff has suffered an invasion of a legally protected interest that is "concrete," "particularized," and "actual or imminent." *Lujan*, 504 U.S. at 560. An injury is concrete when it is *de facto* – "real" rather than "abstract," something that "actually exist[s]." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016). An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *Id.* And an injury is actual or imminent when it exists or is at least "certainly impending" and not merely "conjectural" or "hypothetical." *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013); *Lujan*, 504 U.S. at 560.

In a class action, if the named plaintiffs lack standing, the substitution or addition of new plaintiffs with standing cannot cure the original jurisdictional defect. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (holding that because the "sole named plaintiff 'never had standing'" to pursue her claims the case must be dismissed and could not be fixed by substituting new named plaintiffs); *Stanford v. Home Depot USA, Inc.*, 358 Fed. App'x 816, 819 (9th Cir. 2009) ("[S]ince plaintiff had no live claim and therefore no standing when the case was first brought, this is not a situation in which the case can continue with a putative class member substituted as the named plaintiff.").

### ii.    The Original Plaintiffs Have Not Suffered an Injury

In both the original and amended complaints, the claims of the Original Plaintiffs are premised on the theory that Defendants violated ERISA by using plan-based reduction factors to compute their lump sum benefits under the Plan, instead of using a present-value calculation of the age-65 pension benefit that employs the applicable mortality table and the applicable interest

1   rate prescribed by the Department of the Treasury.  Am. Compl. ¶¶ 59-61, 75, 83.  Each of these

2   Plaintiffs alleged that they elected to participate in a limited-time eligibility opportunity that was

3   made available for certain participants to receive their entire pension benefit early, and that they

4   each chose to receive their benefit in the form of a full lump sum payment.  Am. Compl. ¶¶ 28-

5   30, 75; Ross Decl. ¶ 5, Ex. D (Plan Amendment Ten, Supp. 17).  This was called the Lump Sum

6   Window ("LSW").  *Id.*  In calculating their lump sum payments due under the LSW, Plaintiffs

7   allege that AT&T Services applied an improper and unreasonable "early retirement factor" that

8   resulted in less than actuarially equivalent benefits as required by ERISA.  Am. Compl. ¶¶ 75, 81.

9   Plaintiffs contend that AT&T Services should have used the presumptively reasonable interest

10  rate and mortality table provided by 26 U.S.C. § 417(e).  *Id.* ¶ 83.

11      A simple review of the applicable Plan and Program terms demonstrates that not only did

12  the Plan compute the Original Plaintiffs' benefits using the § 417(e) interest rate and mortality

13  tables that they contend are correct, but also that the Early Retirement Factors played no part in

14  the determination of their lump-sum benefits.  The application of these Plan terms is confirmed

15  by reviewing the benefit calculations performed by the recordkeeper Fidelity.[6]  Under these

16  circumstances, the Original Plaintiffs cannot satisfy the Article III minimum to allege injury-in-

17  fact because they have suffered no harm and their claims must be dismissed.

18      Each Original Plaintiff was subject to the rules of a different Program, but a step-by-step

19  analysis of the terms that govern each Original Plaintiff's lump-sum payment confirms

20  Defendants' argument:

21  - Plaintiff Eliason participates in the AT&T Legacy Bargained ("ALB") Program and

22      elected to participate in the LSW.  Am. Compl. ¶ 28.  Under the Plan, "the amount of the

23      LSW Lump Sum is the Actuarial Equivalent (as defined in the Plan) of the ALB Program

24      Pension Benefit payable at age 65."  Ex. D, § 5.1.6.  For the ALB Program, the Plan

25      defines "Actuarial Equivalent" as using the mortality table and interest rate prescribed

26  _____

[6] The Original Plaintiffs do not allege that the Joint and Survivor Annuity Factors were applied to
27  reduce their lump-sum payments, nor could they, as the Plan terms and Plaintiffs' actual lump-
    sum calculations make clear the Joint and Survivor Annuity Factors also played no role in
28  determining their lump-sum benefits.

1    under ERISA § 417(e)(3)(C).  Ex. A, § 3.1(3); Ross Decl. ¶ 6, Ex. E (Plan Supp. 9),

2    §§ 1.2, 2.3, 2.4, 3.1, 4.1.  Consistent with the Plan language, Eliason's lump-sum benefit

3    was calculated by multiplying her age-65 accrued benefit by the § 417(e) deferred lump

4    sum factor, which converts the deferred vested annuity to a present value by using the §

5    417(e) interest rate and mortality table.  Korthas Decl. ¶ 3, Ex. 1 (Fidelity calculation

6    worksheet for Eliason's lump-sum benefit).[7]  In sum, Eliason has already received what

7    she says the Plan was required to provide under ERISA.  An "early reduction factor" was

8    not applied in the calculation of the lump sum benefit that Eliason was eligible to receive.

9    *Id.*

10   • Plaintiff Hueckel participates in the AT&T Nonbargained Program of the Plan and elected

11      to participate in the LSW.  Am. Compl. ¶ 29; Ross Decl., ¶ 7, Ex. F (Nonbargained

12      Program).  Under the LSW, the lump-sum payment for the Nonbargained Program is

13      calculated in one of two ways.  For some participants, it is "equal to the Actuarial

14      Equivalent" of the participant's monthly annuity pension benefit.  Ex. D, § 5.1.2(i).  As

15      with the Legacy Bargained Program, "Actuarial Equivalent" for the Nonbargained

16      Program is also defined under the Plan as requiring use of the § 417(e) factors.  Ex. E,

17      §§ 1.2, 2.3, 2.4, 3.1, 4.9.  For other Nonbargained Program participants, the LSW lump

18      sum "is determined in accordance with the current provisions of the Nonbargained

19      Program."  Ex. D, § 5.1.2(ii).  As of January 1, 2018 the Nonbargained Program lump-

20      sum payment is governed by Amendment Six to the Plan, which would cover an election

21      made in June 2019.  Ross Decl. ¶ 8, Ex. G (Plan Amendment Six), § 13.2.6; Am. Compl.,

22      ¶ 29 (alleging that Hueckel elected to participate in the LSW in June 2019).  Amendment

23      Six provides that the "minimum lump sum" is calculated using the § 417(e) factors.  *Id.*, §

24      13.2.6(2).  Thus, under either scenario, Hueckel would *at a minimum* receive a lump-sum

25      payment that was calculated as present value of her accrued benefit at her Normal

26   ───────────────
     [7] In a motion challenging subject matter jurisdiction, the court may consider evidence, such as
27   affidavits and other relevant materials, that are outside of the face of the complaint.  *Wood v. City
     of San Diego*, 678 F.3d 1075, 1083 n.8 (9th Cir. 2012); *Safe Air for Everyone v. Meyer*, 373 F.3d
28   1035, 1039 (9th Cir. 2004); *Northern California River Watch v. Ecodyne Corp.*, 2013 WL
     2645767, at *3 (N.D. Cal. June 12, 2013).

1    Retirement Age using the § 417(e) factors that she requests through this lawsuit.

2    Hueckel's lump-sum benefit was initially calculated in two different ways: using an

3    immediate lump-sum factor and the § 417(e) factors.  Korthas Decl. ¶ 4, Ex. 2 (Fidelity

4    calculation worksheet for Hueckel's lump sum benefit).  Because use of the § 417(e)

5    factors resulted in the larger benefit, that is the lump-sum benefit that Hueckel was

6    eligible to receive.  *Id*.  Thus, Hueckel has not suffered harm because her lump-sum

7    benefit was determined using the very § 417(e) factors she requests in this lawsuit.  An

8    "early reduction factor" was not applied in the calculation of the lump sum benefit that

9    Hueckel was eligible to receive.

10   • Finally, Plaintiff Lawrence's lump-sum payment was also calculated using the § 417(e)

11   factors, as required by the Plan.  Plaintiff Lawrence participates in the Southwest Program

12   of the Plan.  Am. Compl. ¶ 30.  Lawrence's lump sum was "determined by the

13   [Southwest] Program[ ], in accordance with the Plan provisions in effect on the LSW

14   Benefit Commencement Date."  Ex. D, § 5.1.  The Southwest Program calculates lump-

15   sum benefit payments using the mortality table and interest rate provided in § 417(e).  Ex.

16   A, § 3.1(62); Ex. E, §§ 1.2, 2.3, 2.4, 3.1, 4.12.1.  In accordance with these Plan terms,

17   Lawrence's lump sum was calculated by multiplying her age-65 accrued benefit by the

18   § 417(e) deferred lump sum factor.  Korthas Decl. ¶ 5, Ex. 3 (Fidelity calculation

19   worksheet for Lawrence's lump-sum benefit).   As a result, like Eliason and Hueckel,

20   Lawrence has received precisely the lump-sum benefit that she alleges she was owed and

21   an "early reduction factor" was not applied in the calculation of the lump sum benefit that

22   she was eligible to receive.  *Id.*

23   In calculating the Original Plaintiffs' lump-sum benefits, AT&T Services was bound to

24   apply the terms of the Plan.  As shown above, for each of Plaintiffs' Programs, the Plan terms

25   provided that Plaintiffs would receive an early lump-sum payment that was no less than the

26   present value of their age-65 pension benefits, computed with the § 417(e) factors.

27   In a class action, the named plaintiffs must be able to establish a sufficient injury-in-fact

28   to support Article III standing.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022

(9th Cir. 2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (citation omitted).  Here, the Original Plaintiffs allege that they have been injured by the application of "early retirement factors" instead of the § 417(e) factors.  The Court need not accept Plaintiffs' allegations as true.  *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998) (a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").  The Plan terms and benefit calculations for the Original Plaintiffs' lump-sum distributions demonstrate conclusively that they received benefits calculated with the § 417(e) factors.

To qualify as an injury-in-fact, an alleged harm must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61.  Having received exactly what they allege they were owed, Plaintiffs have come to this Court with no wrong for the Court to redress.  Accordingly, the Original Plaintiffs' claims must be dismissed for lack of standing.

     **iii.**  **The Four New Named Plaintiffs Cannot Fix this Jurisdictional Deficiency**

In their motion to dismiss the original complaint, Defendants provided this same evidence to Plaintiffs and the Court to establish that Plaintiffs Eliason, Hueckel, and Lawrence did not have standing to prosecute this case.  After reviewing Defendants' motion to dismiss, Plaintiffs' counsel informed Defendants' counsel that they would amend the complaint rather than oppose the motion, explaining that their amendment would add new named Plaintiffs.  Bartine Decl. ¶ 2.  Defendants' counsel explained that an amended complaint that merely added new named plaintiffs without addressing the Original Plaintiffs' lack of standing would be procedurally improper under *Lierboe*, 350 F.3d at 1023.  *Id.* ¶ 3.  Plaintiffs' counsel failed to heed that warning and filed the amended complaint adding four new Plaintiffs without any material alteration to the Original Plaintiffs' deficient standing allegations.  *Compare* Compl. ¶¶ 26-28 *with* Am. Compl. ¶¶ 28-30; Bartine Decl. ¶ 4.

The Original Plaintiffs "cannot cure [their] lack of standing by adding another plaintiff," *Bird v. First Alert, Inc.*, 2015 WL 3750225, at *11 (N.D. Cal. June 15, 2015), because "'[a] party

1   lacking Article III standing at the outset of the lawsuit has no power to prosecute the action.'"

2   *Thome v. U.S. Food & Drug Admin.*, 2011 WL 3206910, at *2 (N.D. Cal. July 27, 2011) (quoting

3   *In re Flash Memory Antitrust Litig.*, 2010 WL 2465329, at *3 (N.D. Cal. June 10, 2010)).  As

4   such, the Original Plaintiffs in this case "may not create jurisdiction by amendment where none

5   exists" and their amended complaint is procedurally improper.  *Id.* (granting motion to dismiss an

6   amended complaint with prejudice because the original named plaintiff did not have standing).  If

7   the new named Plaintiffs wish to pursue their claims, they must re-file them in a new lawsuit, but

8   the Court lacks jurisdiction over this case and the amended complaint must be dismissed.[8]

9   **B.      Plaintiffs Additionally Fail to State a Claim for Relief**

10  **i.      Legal Standard**

11  Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if the plaintiff

12  fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  While a court

13  analyzing a motion to dismiss must accept as true all well-pleaded factual allegations in the

14  complaint, a court is "not bound to accept as true a legal conclusion couched as a factual

15  allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although a complaint need not contain

16  detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

17  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

18  cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual

19  allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such

20

21  ---

[8] In their haste to fix this fatal standing issue, Plaintiffs' counsel added at least two individuals to
22  the amended complaint whose claims present threshold failings.  Plaintiff Patricia Gilchrist began
    receiving her pension benefits in 2012.  Am. Compl. ¶ 32.  Since Gilchrist filed her claims in
23  December 2019, ERISA's six-year statute of repose applies to bar her claims.  *See* 29 U.S.C. §
    1113(1); *Allbaugh v. California Field Ironworkers Pension Tr.*, 2016 WL 6138244, at *10 (D.
24  Nev. Oct. 19, 2016) ("Claims alleging a breach of an ERISA fiduciary duty or seeking equity
    under 29 U.S.C. § 1132(a)(3) are governed by ERISA's" six-year statute of repose).  And when
25  Plaintiff Gerald Klein left his employment with AT&T, he signed a release of claims, including
    "any and all" ERISA claims except those relating to "vested pension . . . benefits."  McDonald
26  Decl. ¶¶ 5-6.  The release's carve-out for claims for vested pension benefits under the terms of a
    benefit plan does not apply to Klein's claims that Defendants violated ERISA and/or their
27  fiduciary duties.  *See Stanley v. George Washington Univ.*, 394 F.Supp.3d 97, 107-09 (D.D.C.
    2019); *In re SunTrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131, at *2 (N.D. Ga. Aug. 17,
28  2016).

1    that it is "plausible on its face." *Id.* at 570.  A complaint that "plead[s] facts that are 'merely

2    consistent with' a defendant's liability" flunks this test, as it "stops short of the line between

3    possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.

4                    **ii.      Grounds for Dismissal**

5                         **a.      Plaintiffs Fail to Allege Facts Warranting Reformation**

6             Even if the Court could entertain Plaintiffs' claims, the claims warrant dismissal under

7    Rule 12(b)(6) because they fail to state a claim for the equitable remedy of reformation, the

8    remedy Plaintiffs seek for the ERISA violations they allege.  "[R]eformation is proper only in

9    cases of fraud and mistake."  *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162,

10   1166 (9th Cir. 2012) (citation omitted); *see also Morales v. Intelsat Global Serv. LLC*, 554 Fed.

11   App'x 4, 5 (D.C. Cir. 2014); *Cross v. Bragg*, 329 Fed. App'x 443, 454 (4th Cir. 2009).  The

12   amended complaint does not allege facts that state such a claim.

13            Presumably to support their reformation demand, Plaintiffs allege that the Plan

14   Administrator applied reduction factors that would result in alternative forms of benefits that were

15   not actuarially equivalent without disclosing that to participants, which saved the Plan Sponsor

16   money.  Am. Compl. ¶¶ 70-72, 92, 107.  Despite Plaintiffs' attempt to label this conduct

17   "equitable fraud or inequitable conduct," *id.* ¶ 71, these are not allegations of mistake or fraud,

18   and they certainly do not satisfy the heightened pleading standard of Rule 9(b).  *Concha v.*

19   *London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (holding that Federal Rule of Civil Procedure 9(b)

20   applies to ERISA claims based on fraud).  Plaintiffs provide no specific facts showing the "who,

21   what, when, where and how" of the alleged fraud.  *Cafasso, United States ex rel. v. Gen.*

22   *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citation omitted).

23            Instead, Plaintiffs maintain the presence of such conduct only to bolster their dispute over

24   whether the mortality tables and interest rates used to calculate various early pension benefits

25   were appropriate.  Put another way, this alleged "fraud" merely represents the parties'

26   disagreement over whether the Plan's terms satisfy ERISA's actuarial equivalence requirement,

27   as opposed to "intended deception or . . . gross negligence as to amount to constructive fraud,"

28   which is what the reformation remedy requires.  *Pearce v. Chrysler Grp. LLC Pension Plan*, 893

1    F.3d 339, 348-49 (6th Cir. 2018).  Without a plausible theory of fraud or mistake, Plaintiffs'

2    requests for reformation must be dismissed.

3               **b.**    **Plaintiffs Inadequately Plead Claims for Breach of Fiduciary**

4                         **Duty against AT&T Services**

5               The amended complaint asserts a bevy of breach of fiduciary duty claims against AT&T

6    Services in its role as Plan Administrator.  In Count Five of the amended complaint, Plaintiffs

7    allege that AT&T Services engaged in various fiduciary breaches related to their calculation of

8    pension benefits in applying the Plan's reduction factors that Plaintiffs claim run afoul of ERISA.

9    Additionally, in amending the complaint, Plaintiffs added superficial allegations in each of

10   Counts One through Four seeking relief under ERISA Section 502(a)(2), allegedly for fiduciary

11   breaches, but with no explanation of the breach.

12              To be found liable for a breach of fiduciary duty under ERISA, a party must act in a

13   fiduciary capacity.  *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir.

14   2004).  To determine whether a party is acting as an ERISA fiduciary, the relevant inquiry is

15   whether the party exercised "discretionary authority or discretionary control" as to the

16   management or administration of a plan.  29 U.S.C. § 1002(21)(A).  While the Ninth Circuit has

17   not addressed whether benefit calculations invoke fiduciary status, other Circuit courts, as well as

18   the Department of Labor, the agency tasked with enforcement of ERISA, have instructed that

19   "merely calculating benefits, without more, does not establish fiduciary status under ERISA."

20   *Lebahn v. Nat'l Farmers Union Uniform Pension Plan*, 828 F.3d 1180, 1186 (10th Cir. 2016); *see*

21   29 C.F.R. § 2509.75-8(D)(2) (the "[c]alculation of benefits" is a "purely ministerial function[]"

22   when the benefit plan has a "framework of policies, interpretations, rules, practices and

23   procedures made by other persons").  In particular, the Department of Labor has reasoned that an

24   individual calculating benefits pursuant to plan terms "does not have discretionary authority or

25   discretionary control respecting management of the plan, does not exercise any authority or

26   control respecting management of the plan, and does not render investment advice."  *Id.*

27              Such is fatal to Plaintiffs' claims in Count Five, because "[w]ith no fiduciary function

28   involved, there can be no breach of fiduciary duty."  *Livick v. Gillette Co.*, 524 F.3d 24, 30 (1st

- 14 -

1   Cir. 2008).  Plaintiffs' Count Five, the only count providing any explanation of how AT&T

2   Services allegedly breached its fiduciary duties, is derived from AT&T Services' responsibility to

3   calculate Plaintiffs' pension benefits.  But Plaintiffs plead no evidence of AT&T Services'

4   discretion; in fact, their amended complaint is replete with challenges to the Plan's terms.[9]

5   Accordingly, Count Five's breach of fiduciary duty claim against AT&T Services has no

6   foundation.

7          The superficial allegations of fiduciary breach against AT&T Services in Counts One

8   through Four fail for an additional reason.  In the original complaint, Plaintiffs sought an

9   equitable remedy for Defendants' alleged violations of ERISA's actuarial equivalent and anti-

10  forfeiture claims through Section 502(a)(3) of ERISA, which allows "a participant, beneficiary, or

11  fiduciary" to obtain equitable relief for alleged violations of ERISA or plan terms.  29 U.S.C. §

12  1132(a)(3).  In the amended complaint's Counts One through Four, Plaintiffs added allegations

13  claiming they are also entitled to a remedy against AT&T Services under 502(a)(2) of ERISA,

14  which allows "a participant, beneficiary or fiduciary" to bring an action for breach of fiduciary

15  duty.  29 U.S.C. § 1132(a)(2); *see* Am. Compl. ¶¶ 133-35, 145-47, 158-60, 172-74.

16         Nowhere, however, do Plaintiffs attempt to allege facts in Counts One through Four

17  establishing how AT&T Services was acting as a fiduciary or how that conduct failed to satisfy

18  ERISA's requirements that a fiduciary act prudently and solely in the best interests of Plan

19  participants.[10]  Instead, these allegations are no more than threadbare recitals of a Section

20  502(a)(2) fiduciary breach claim.  Taking Count One as an example, Plaintiffs merely allege that:

21  (1) Section 502(a)(2) of ERISA "authorizes a participant or beneficiary to bring a civil action 'for

22  appropriate relief under section 1109 [Section 409] of this title'"; (2) that Section 409(a) of

23  ERISA "mandates that '[a]ny person who is a fiduciary with respect to a plan who breaches any

24  of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be

25  _____

26  [9] Designing a plan is not a fiduciary function.  *See Wright*, 360 F.3d at 1101-02; *In re Calpine
    Corp.*, 2005 WL 1431506, at *4 (N.D. Cal. Mar. 31, 2005).

27  [10] Plaintiffs also do not explain how the conclusory fiduciary breach allegations against AT&T
28  Services in Counts One through Four differ from the fiduciary breach allegations contained in
    Count Five.

1    personally liable to make good to such plan any losses to the plan resulting from each such

2    breach, and to restore to such plan any profits of such fiduciary which have been made through

3    use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial

4    relief as the court may deem appropriate, including removal of such fiduciary'"; and (3) that

5    Plaintiffs seek relief against AT&T Services under Sections 502(a)(2) and 409(a) "to redress

6    violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) as described herein." Am. Compl. ¶¶

7    133-35.  These cookie cutter allegations of statutory text are repeated in Counts Two, Three, and

8    Four.  *See id.* ¶¶ 145-47, 158-60, 172-74.

9          But Plaintiffs allege no grounds for these additional fiduciary breach claims against

10   AT&T Services and their "formulaic recitation of the elements of a cause of action will not do."

11   *Twombly*, 550 U.S. at 555.  To the extent Plaintiffs base these fiduciary breach claims on the

12   factual allegations contained elsewhere in the amended complaint, then those claims fail because

13   they are directed at AT&T Services' calculation of benefits, which, as discussed above with

14   respect to Count Five, is not a fiduciary act.  For these reasons, the Section 502(a)(2) fiduciary

15   breach claims contained in Counts One through Four should be dismissed.

16                    **c.    Plaintiffs Fail to State a Claim Against AT&T Inc.**

17         Plaintiffs assert various claims against AT&T Inc. as Plan Sponsor purportedly relying on

18   Section 502(a)(3), which allows a party to enjoin or seek appropriate equitable relief for alleged

19   violations of ERISA or plan terms.  29 U.S.C. § 1132(a)(3).  AT&T Inc. is not a proper

20   Defendant.

21         Neither ERISA nor the case law defines the universe of actors who may be subject to

22   liability under § 502(a)(3).  *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530

23   U.S. 238, 247 (2000).  Instead, whether a § 502(a)(3) claim has been properly asserted against a

24   defendant must be determined based on the misconduct alleged and the availability of

25   "appropriate equitable relief."  *Id.*; *see also CGI Techs. & Solutions, Inc. v. Rose*, 2010 WL

26   11684296, at *2 (W.D. Wash. Oct. 21, 2010).

27         As noted above, Plaintiffs' allegations focus on the Plan Administrator's (AT&T

28   Services) calculation of their pension benefits based on allegedly deficient Early Retirement

                                            - 16 -

1    Factors and Joint & Survivor Annuity Factors.  *See*, *e.g.*, Am. Compl. ¶¶ 72-73, 93, 105.

2    Specifically, Plaintiffs allege that "[t]he Early Retirement and Joint and Survivor Annuity Factors

3    that *AT&T Services* used to determine benefits left participants worse off than if they retired at

4    age 65."  *Id.* ¶ 90 (emphasis added).  Plaintiffs also allege that it was *AT&T Services*, as Plan

5    Administrator, who "impermissibly pa[id] Plan participants less than the actuarial equivalent of

6    their ERISA-protected retirement benefits" and "caused . . . Plan participants to forfeit their

7    ERISA-protected benefits."  *Id.* ¶¶ 129, 141, 155.   Such claims challenging Plan administration

8    may not be brought against a plan sponsor.  *Cf. Spinedex Physical Therapy USA Inc. v. United*

9    *Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297-98 (9th Cir. 2014) (claims concerning the

10   administration of a plan must be brought against the plan administrator or similar plan fiduciary);

11   *see also* Ex. A, §§ 17.1 ("The Plan Administrator is responsible for the general administration of

12   the Plan."), 17.2 ("The Plan Administrator will have all powers necessary or appropriate to

13   accomplish its respective duties and obligations including, without limitation, complete and

14   absolute discretion to interpret the Plan and all matters of fact with respect to such duties and

15   obligations.").  Plaintiffs allege no facts suggesting that AT&T Inc. was involved in the

16   calculation of their pension benefits.

17         Additionally, Plaintiffs' claims against AT&T Inc. in Counts Three and Four are nothing

18   more than formulaic recitations of legal claims that flunk the pleading requirements of *Twombly*

19   and *Iqbal*.  Without pointing to any conduct by AT&T Inc. that purportedly violates ERISA,

20   Plaintiffs assert that they "seek all available and appropriate equitable relief against AT&T

21   Services *and AT&T Inc.*" under ERISA § 502(a)(3) for violations of ERISA §§ 205 and 206.

22   Am. Compl. ¶¶ 157, 171 (emphasis added).  These barebones allegations do not suffice to state a

23   plausible claim against AT&T Inc.

24         **C.      If Not Dismissed, This Case Should be Transferred to Texas Federal Court**

25                   **i.      Legal Standard**

26         Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district

27   where it could have been brought "[f]or the convenience of the parties and witnesses, in the

28   interest of justice."  28 U.S.C. § 1404(a); *see also Earth Island Institute v. Quinn*, 56 F. Supp. 3d

- 17 -

1110, 1117 (N.D. Cal. 2014) ("[A] district court has broad discretion to adjudicate motions to transfer on a case-by-case basis.") (citation omitted).  Transfer is appropriate so long as "consideration[s] of convenience and fairness" favor transfer.  *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The decision to transfer lies within the sound discretion of the trial judge.  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

**ii.     Section 1404(a) Affords this Court Wide Discretion to Transfer Cases**

In the event that the Court determines that the case should not be dismissed based on the reasons stated above, Defendants move in the alternative to transfer venue to the United States District Court for the Northern District of Texas.  All of the events that are relevant to Plaintiffs' claims – the Plan Administrator's application of the Plan's terms to allegedly reduce Plaintiffs' benefits – took place within the Northern District of Texas where Defendants each reside.  *See* Brockman Decl. ¶¶ 3, 6.  Plaintiffs' only foothold in the Northern District of California is that certain named Plaintiffs (Original Plaintiff Hueckel and recently-added Plaintiffs Scott and Gilchrist) reside there, along with an unidentified number of absent putative class members.  These reasons are insufficient to override the interests of justice that will be served, and the convenience to the parties and witnesses that will be gained, by transferring this case to the Northern District of Texas.  This is particularly so given that Plan terms instruct the application of the law of Texas where federal law does not govern.  *See infra* at 21 n.12.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Its purpose is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen*, 376 U.S. at 616 (internal quotation omitted).  Transfer is appropriate where the case could have been brought in the Northern District of Texas and transfer serves the "convenience of the parties and witnesses" and is in the "interest of justice."  28 U.S.C. § 1404(a).  To evaluate these final two considerations, courts make an "individualized, case-by-case" determination based on several relevant factors.  *Earth Island Institute*, 56 F. Supp. 3d at

- 18 -

1117 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).  The court may

consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the

state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the

respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of

action in the chosen forum, (6) the differences in costs of litigation in the two forums, (7) the

availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8)

the ease of access to sources of proof." *Jones*, 211 F.3d at 498-99.  On balance, these factors

militate in favor of transfer.

### iii.  This Case Could Have Been Brought in the Northern District of Texas

The only limitation on the Court's discretion to transfer a case under § 1404(a) is the

requirement that the new forum be a "district or division where [the case] might have been

brought."  28 U.S.C. § 1404(a).  It is beyond dispute that this case could have been brought in the

Northern District of Texas.  Under ERISA's venue provision, an action "may be brought in the

district where the plan is administered, where the breach took place, or where a defendant resides

or may be found."  29 U.S.C. § 1132(e)(2).  AT&T Services resides in Dallas, Texas within the

Northern District of Texas, and AT&T Inc. is a holding company that conducts no business with

the public and is headquartered in the Northern District of Texas.  Brockman Decl. ¶¶ 3, 6.

Additionally, the Plan is maintained in Dallas, Texas, and Plan Administrator AT&T Services

directed the application of the terms of the Plan to determine Plaintiffs' pension benefits in

Dallas.  *Id.* ¶¶ 7-10.  In sum, the Northern District of Texas is the jurisdiction where all

Defendants reside, where the Plan is administered, and where the events giving rise to Plaintiffs'

claims occurred.

### iv.  Plaintiffs' Claims Lack Any Meaningful Connection to This Forum

This forum lacks any material connection to Plaintiffs' claims that AT&T Services

improperly calculated their early lump-sum payments in violation of ERISA.  Plaintiffs'

connections to the Northern District of California begin and end with their allegations that

Hueckel, Scott, and Gilchrist reside and were employed by an AT&T subsidiary in this District.

But in a class action, Plaintiffs' contacts with the forum "are of minimal value." *Italian Colors*

*Rest. v. Am. Express Co.*, 2003 WL 22682482, at \*5 (N.D. Cal. Nov. 10, 2003).[11]  "[W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the . . . cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."  *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 525-26 (1947).

As noted above, all of the decisions that are relevant to resolving Plaintiffs' claims took place in the Northern District of Texas.  AT&T Inc. is incorporated in Delaware and headquartered in Dallas, Texas.  Brockman Decl. ¶ 3.  AT&T Inc. is a holding company that conducts no business directly with the public, including in California.  *Id.* ¶ 4.  AT&T Inc. has officers and a board of directors, but it has no employees in California or elsewhere.  *Id.*  AT&T Inc.'s involvement in its subsidiaries is limited to stock ownership.  *Id.* ¶ 5.  The Plan operates entirely through the Plan Administrator, AT&T Services, which is headquartered in Texas.  *Id.* ¶ 9; Ex. A, § 22.9 ("The situs of the Plan hereby created is the State of Texas.").

The relevant Plan documents, cited throughout this motion, are all designed and modified at company headquarters in Dallas, Texas.  Brockman Decl. ¶¶ 7-8.  Plan administration decisions are also made in Dallas.  *Id.* ¶ 8.  There are no relevant contacts in the Northern District of California relating to Plaintiffs' causes of action, aside from the participation of Plaintiffs Hueckel, Scott, and Gilchrist in the Plan.  Assuming for present purposes that Plaintiffs' amended complaint is not jurisdictionally deficient, these Plaintiffs at most felt the effects of those Plan-related decisions in this forum, but those effects do not speak directly to whether the Northern District of California is the appropriate forum.  Plaintiffs allege that Plan participation is a common characteristic across the proposed class (Am. Compl. ¶ 113) and, therefore, Plaintiffs' individual decisions to participate in this forum are irrelevant to adjudication of their claims.

**v.**     **The Remaining Factors Compel Transfer**

---

[11] Plaintiffs allege, on information and belief, that "thousands of Plan participants reside in this District."  Am. Compl. ¶ 25.  This allegation does not alter the analysis.  Plaintiffs allege a nationwide class ("All participants in the Plan (and their beneficiaries)," *id.* ¶ 113) and absent putative class members reside in significant numbers in other states across the country.

1    Application of the remaining discretionary factors set out in *Jones* confirms that transfer is

2    warranted.  Normally, the plaintiffs' choice of forum is an important factor in this analysis, but it

3    is of lesser significance where the relevant conduct did not take place in the chosen forum.  *Park*

4    *v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1094 (N.D. Cal. 2013) (citing *Lou v.*

5    *Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the

6    forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled

7    to only minimal consideration.")).  Here, the local interest is, at most, limited to the Bay Area-

8    based named Plaintiffs' alleged harm and is unconcerned with the harm of the remaining named

9    Plaintiffs or putative class members.  Therefore, Plaintiffs' decision to file suit in the Northern

10   District of California is entitled to reduced deference.  *Fabus Corp. v. Asiana Exp. Corp.*, 2001

11   WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) ("the degree to which courts defer to the plaintiff's

12   chosen forum is substantially reduced where the plaintiff's forum choice is not its residence or

13   where the forum chosen lacks a significant connection to the activities alleged in the complaint").

14   Moreover, Plaintiffs sue on behalf of a putative class, which renders Plaintiffs' choice of forum

15   even less significant.  *Belzberg*, 934 F.2d at 739 ("[W]hen an individual . . . represents a class, the

16   named plaintiff's choice of forum is given less weight.").  Plaintiffs have already alleged that they

17   have an adequate class representative in the Northern District of Texas – Plaintiff Lawrence, who

18   lives in Arlington, Texas, just a few miles outside of Dallas.  *See* Am. Compl. ¶ 30.

19   The transferee court's familiarity with the law governing Plaintiffs' claims does not

20   disfavor transfer because both courts are equally familiar with the federal law of ERISA.[12]

21   *Italian Colors*, 2003 WL 22682482, at *3.  And while both courts would be applying the same

22   law, the Northern District of Texas has a stronger interest in the litigation because it is concerned

23   with the long-term, ongoing administration of the Plan within its district and how that

24

25   ───────────────────

     [12] To the extent that state law becomes relevant (*e.g.*, if there are contract interpretation issues),
26   the Plan contains a choice of law provision requiring that "[a]ll provisions of the Plan will be
     construed in accordance with the laws of the State of Texas (excluding any conflict of law
27   principals that refer to the laws of another jurisdiction) except to the extent preempted by federal
     law." Ex. A, § 22.9.  The application of another state's law favors transfer to that venue, as courts
28   are better suited to apply the law of their own forum state.  *See Ming Hsu v. VTEX Energy, Inc.*,
     2007 WL 1232056, at *3 (N.D. Cal. Apr. 26, 2007).

1    administration affects Plan participants, as opposed to the Northern District of California's

2    limited interest in only the claims of Hueckel, Gilchrist, Scott, and other resident putative class

3    members.  *See Vu v. Ortho-McNeil Pharmaceutical, Inc.*, 602 F.Supp.2d 1151, 1157 (N.D. Cal.

4    2009) (the forum with the greater interest in the litigation is the forum where the events at issue

5    took place).

6         When it comes to the comparable cost of litigating this case, the parties' expenses will be

7    materially lower in the Northern District of Texas than if the case were to remain in this forum

8    given the closer proximity to the evidence.  A court sitting in the Northern District of Texas

9    would have easier access to the sources of proof that will be relevant in this case.  Substantially

10   all of the evidence that will be probative of Plaintiffs' claims is located in Dallas.  Brockman

11   Decl. ¶¶ 8-10.  For example, the Plan Administrator and Plan-related documents reside in Dallas,

12   Texas.  Transferring this case to a courthouse within a couple of miles of AT&T's headquarters

13   will undoubtedly be more convenient for witnesses who will be material to the case and will

14   allow the parties to more efficiently take testimony of those witnesses.  *See Deputy v. Long-Term*

15   *Disability Plan of Sponsor Aventis Pharmaceuticals*, 2002 WL 31655328, at *3 (N.D. Cal. Nov.

16   21, 2002) (travel for potential witnesses is a relevant consideration on a motion to transfer).  As a

17   result, litigating in Defendants' home district would be significantly more convenient and cost

18   effective for both parties.  *See Italian Colors*, 2003 WL 22682482, at *5 ("the cost of litigation

19   will be substantially lessened if the action is venued" in the same district as the defendants'

20   principal place of business and "litigation costs are reduced when venue is located near most of

21   the witnesses expected to testify or give depositions").  Plaintiffs, on the other hand, can be

22   represented conveniently in the Northern District of Texas by Lawrence, who resides there, as

23   well as by Plaintiffs' lead counsel who practices out of Washington, D.C.

24        On balance, justice will be served by transferring this case to the district where all

25   Defendants reside and the conduct alleging giving rise to Plaintiffs' claims arose.  Transfer to the

26   Northern District of Texas will be substantially more convenient for all parties to access the

27   relevant evidence in this case without hampering Plaintiffs' prosecution of their claims in any

28   way.

1

**IV.     CONCLUSION**

2          For all of the reasons set forth above, Defendants move the Court to dismiss Plaintiffs'

3   claims set forth in the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1)

4   and (b)(6).  In the alternative, Defendants ask the Court to transfer the case to the Northern

5   District of Texas pursuant to 28 U.S.C. § 1404(a).

6

7   Dated: January 29, 2020                              Respectfully Submitted,

8

9                                                By: s/ Nancy G. Ross

10                                                    Nancy G. Ross
                                                      Brian D. Netter
11                                                    Abigail M. Bartine

12                                                    Attorneys for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28